**UNITED STATES of America, Appellee,**

v.

**Robert Rydell WILLIAMS, Appellant.**

No. 88–5505.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Feb. 8, 1990.

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Jon M. Hopeman, Minneapolis, Minn., for appellee.

Before ARNOLD and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Robert Rydell Williams appeals from his conviction on three counts including aiding and abetting possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1982), conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (1982), and carrying a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Supp. V 1987). On appeal, Williams challenges the district

court's [1] admission of evidence under Federal Rule of Evidence 404(b) and his fifth amendment right to a fair trial, and the district court's failure to suppress certain evidence. We affirm.

## I. BACKGROUND

On January 15, 1988, Minneapolis police officers obtained warrants to search ground level apartments 101 and 102 at 2218 Golden Valley Road, Minneapolis. The apartment building also had basement apartments numbered 1 and 2, and second floor apartments numbered 201 and 202. The search warrants, which provided for a night search and no-knock entry, sought controlled substances, drug paraphernalia, money, packaging material, barter items, drug notes, and writings which might show constructive possession of the residence and the drugs.

Sergeant Nordine conducted surveillance of 2218 Golden Valley Road from January 15, 1988, until January 18, 1988. He observed constant traffic to the rear of the building where many people came to purchase crack cocaine through a small hole in the door. The sergeant knew that the building was heavily barricaded with reinforced doors and windows. Thus, the police decided to enter the building by smashing through the east bedroom wall of apartment 101 with a front end loader.

At 4:00 p.m. on January 18, 1988, the Minneapolis Emergency Response Unit (ERU) [2] drove a front end loader through the wall, and the ERU and other uniformed officers ran into apartment 101 yelling "police." The apartment door was open and Officer Jackson saw a black male run up the stairs to the second floor. Officer Jackson yelled "police" and "stop," and then chased the man up to apartment 202. With several back-up officers, Officer Jackson entered apartment 202 and carefully checked the rooms and closets. The black male was not in the apartment.

ERU Officer Timothy Dolan was summoned to the second floor to blow the locks on apartment 201 with his Avon shotgun [3]. The police believed that the fleeing male could have escaped through a rear door of apartment 202 and hidden in apartment 201. Officer Dolan was unsuccessful and, thus, a battering ram was used to knock open the door. The suspect was not in the apartment, he had run downstairs and was arrested in apartment 101.

Several minutes after the ERU entered, two officers heard glass break on the basement window of apartment 2. The officers saw defendant Williams pull the bars off the window and climb out. The officers arrested Williams and took him to a squad car.

Officer Dolan and several other officers went to the basement to secure apartments 1 and 2. A male was on the floor of apartment 2 with his hands over his head. The officers searched in the immediate area. The basement apartments were vacant, and the only furniture was a refrigerator in apartment 2. An officer noticed currency around the refrigerator and in the process of picking it up, discovered under the refrigerator $1,290 and two plastic bags containing forty chunks of crack.

During the execution of the search warrants, the police observed listening devices in apartments 101, 102, and the hallways. The devices were wired to microphones located above the front and back doors. The exterior doors of the apartment building were constructed of heavy metal, and the doors and windows were secured with locks, heavy metal bars, and chain link fencing. From apartment 202, the police seized plastic baggies, an open plastic file containing bindles, shotguns and shells, photos, drug notes, a police frequency call guide, a Realistic radio, and alcohol (used to cook cocaine into crack). From apartment 101, the police seized a .38 caliber

---

1. The Honorable David S. Doty, United States District Court Judge for the District of Minnesota.

2. The Emergency Response Unit is a specially trained group used to execute warrants in high risk situations where there is danger to officers or others.

3. An Avon shotgun is a weapon with special ammunition used to blow open secured doors.

revolver, a two-way radio, a glass tube normally used for making crack cocaine, bullets and shotgun shells, and three envelopes of photographs, including pictures of defendant Williams. From apartment 102, the police seized a bulletproof vest with a bullet in the pocket and a Realistic scanner. From a closet in the common hall between apartments 1 and 2, the police seized a shotgun, a roll of chain link fencing, and a roll of currency on the floor in the amount of $500. From the rear door of the building, the police seized a polaroid photo which was used to cover the hole through which drug sales were made.

Approximately ten minutes after Williams attempted to climb out the basement window, he asked to talk to Sergeant Nordine. The police brought Williams to the kitchen of apartment 101 and advised him of his *Miranda* rights. Williams stated that he was the occupant of apartment 101, but that he was in the process of moving out. Williams said that he knew nothing about the gun, the cocaine tube, or the two-way radio found in his apartment.

Williams moved to suppress items seized in the search. The magistrate recommended the suppression of the cocaine and the currency found under the basement apartment refrigerator. The district court rejected the recommendation of the magistrate and held that Williams lacked standing to challenge that search.

A jury trial commenced on June 29, 1988. On July 5, 1988, the district judge held a hearing in his chambers on the government's proposal to submit evidence obtained from four previously executed search warrants. The district court ruled that the two 1984 searches were too remote and, thus, the evidence was inadmissible. The district court reserved ruling on the 1986 and 1987 executed warrants.

During trial, the court overruled objections to the admission of evidence seized during execution of the 1986 and 1987 search warrants. The court gave the jury cautionary instructions concerning this evidence. The jury convicted Williams on three counts.

## II. DISCUSSION

### A. Federal Rule of Evidence 404(b)

During trial, the prosecution attempted to offer evidence of "other crimes" through the fruits of four different search warrants executed in 1984, 1986, and 1987. As indicated, the court refused to permit the introduction of evidence from the two searches executed in 1984. The court, however, found that the evidence from the 1986 and 1987 searches was admissible under Federal Rule of Evidence 404(b) [4] to show the defendant's intent, knowledge, and absence of mistake or accident.

The 1986 search warrant was executed on January 16, at 1001 Humboldt North in Minneapolis. Williams was present during the execution of the warrant. This residence had fortified solid steel doors, and the exterior door had a small hole used for passing money or drugs. The police seized baggies containing traces of cocaine, a police scanner, a loaded revolver, and identification in Williams' name.

The 1987 search warrant was executed on October 28, at 4936 Aldrich Avenue North in Minneapolis. The police seized cocaine paraphernalia containing traces of cocaine, identification in Williams' name, a rifle and loaded handgun. Williams later claimed the handgun at the sheriff's office and it was released to him. Williams was present during the execution of this warrant, and stated that he and his girlfriend were just moving out of the apartment. Williams also admitted to using cocaine.

Williams contends that the evidence seized during the execution of the 1986 and 1987 warrants has no bearing upon any of the issues involved at trial. Williams argues that he was never charged for any crimes resulting from the prior two

---

**4.** Fed.R.Evid. 404(b) provides:

 **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

searches and, thus, there was no connection to his knowledge of crack dealing in this case. Also, his possession of a gun during the prior searches has no relevance to his knowledge or motive in possessing a gun in this case. Further, Williams argues that his mere presence is insufficient to support a finding that he was "an actor" during the prior two searches.

The admission of evidence concerning prior drug dealing and usage has been approved by this circuit. *See United States v. Haynes*, 881 F.2d 586, 589–90 (8th Cir.1989) (upholding the admission of evidence of prior marijuana dealings); *United States v. Armijo*, 834 F.2d 132, 135 (8th Cir.1987), *cert. denied*, 485 U.S. 990, 991, 108 S.Ct. 1297, 99 L.Ed.2d 507 (1988) (upholding the admission of evidence of prior drug use). An appellate court should reverse only when it is clear that the evidence has no bearing on the case. *United States v. McMillian*, 535 F.2d 1035, 1039 (8th Cir.1976), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978). The trial court has broad discretion in determining admissibility of evidence under Rule 404(b). The trial court neither makes a preliminary finding that the government has established the "other crimes" evidence by a preponderance, nor does it weigh credibility. Rather, the standard for admission of "other acts" evidence is whether the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant was the actor. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988); *United States v. Schleicher*, 862 F.2d 1320, 1322 & n. 2. (8th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1326, 103 L.Ed.2d 594 (1989). In determining the admissibility of "other crimes" evidence, the trial court should not merely restate the rule, but the court should specify which elements of Rule 404(b) form the basis of its ruling and why. *United States v. Harvey*, 845 F.2d 760, 762 (8th Cir.1988).

In this case, the district court specified that both knowledge or intent and absence of mistake or accident were grounds for admissibility. The district court properly instructed the jury that the evidence had limited usage.[5] We find that Williams was "an actor" because he claimed the guns seized, he was present during the searches, and he admitted to using cocaine. We find that the jury could have found by a preponderance of the evidence that Williams knowingly possessed the items seized during the prior searches. Also, Williams was found with guns and cocaine paraphernalia during the execution of the 1986 and 1987 search warrants. Thus, the jury could have found that it was no mistake or accident that Williams had guns and drug paraphernalia in his apart-

---

5. The court gave cautionary instructions to the jury at two different times during the trial. After the government presented evidence from the 1986 search, the court gave the following instruction:

> [Y]ou have heard evidence and probably will hear some more evidence, or at least it is going to be offered that Defendant Robert Williams may have committed an unlawful act at a time and place outside of those alleged in the indictment, and not part of the proof of the crime for which he is now on trial.
>
> You may not consider such evidence if you find that it is true as proof that Mr. Williams acted unlawfully in respect to the charges in the indictment.
>
> In other words, you have to keep this evidence separate in your mind from the evidence that he acted unlawfully under the indictment in which he is charged in this Court.
>
> You may, however, consider such evidence in determining whether the Government has

proven beyond a reasonable doubt that the Defendant, Mr. Williams, at the time and places alleged in the indictment acted with knowledge or intent and without mistake or accident to commit the unlawful acts alleged in the indictment.

Trial Transcript, vol. III at 338–39.

Before the government introduced the evidence from the 1987 search, the court gave the following instruction:

> I just want to remind the Jury that the evidence you are about to hear is evidence about a past act or crime of Mr. Williams. It should not be used by you to show or to prove that he committed the crime that he has been charged with in the indictment; but, can only be used by him to show that he had the intent or motive or lack of—that it was a mistake on his part. In other words, it doesn't go to prove the crime that he has been indicted for, but to show that there may be some other reason that is a collateral kind of a reason.

*Id.* vol. IV at 346.

ment during the execution of the January 15, 1988, warrant. As the challenged evidence concerned knowledge and absence of mistake, we find that the evidence does have bearing on the case, and the district court did not abuse its discretion in admitting this evidence.

### B. Failure to suppress evidence

In his Report and Recommendation, the magistrate recommended suppression of the cocaine and the currency found underneath the refrigerator. The district court rejected this recommendation and denied Williams' motion to suppress the evidence seized from under the refrigerator. "[T]he Court must conclude that none of the defendants had a reasonable expectation of privacy in the basement apartments and, therefore, do not have standing to challenge the constitutionality of the search of those apartments." *United States v. Smith*, No. 4–88–22, slip op. at 8 (D.Minn. June 8, 1988). Williams asserts that he had a reasonable expectation of privacy because he had the ability to exclude others from the area and he had "dominion and control" over the area and the items seized. *See Rakas v. Illinois*, 439 U.S. 128, 149, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978).

 We do not need to reach the standing issue. The police officers could lawfully conduct a sweep search of apartment 2 because they were looking for fleeing suspects. *See United States v. Arcobasso*, 882 F.2d 1304, 1306–07 (8th Cir.1989) (upholding protective sweep search of house and subsequent seizure of gun based on exigent circumstances and plain view doctrines); *United States v. Antwine*, 873 F.2d 1144, 1146–47 (8th Cir.1989) (upholding warrantless entry and protective sweep with subsequent seizure of handgun based on exigent circumstances). In the course of conducting the sweep search, an officer bent down to pick up currency strewn around the refrigerator and inadvertently discovered the forty chunks of crack and the $1,290. Thus, the seizure of the items under the refrigerator was permissible un-

der the plain view doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971).

The government asserts that there are three alternative bases for affirming the district court's decision to admit the evidence seized from underneath the refrigerator. In light of our finding that the police conducted a lawful sweep search, that the evidence was discovered inadvertently and, therefore, admissible under the plain view doctrine, we find it unnecessary to review the alternative arguments.

### III. CONCLUSION

Based on the foregoing reasons, we affirm the district court's admission of evidence from the 1986 and 1987 search warrants under Federal Rule of Evidence 404(b), and we affirm the district court's denial of Williams' motion to suppress the evidence found under the refrigerator in apartment 2.