**UNITED STATES of America, Appellee,**

v.

**John Henry TURNER, Jr., Appellant.**

**No. 96–1857EMCG.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 19, 1996.

Decided Jan. 13, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 26, 1997.

Michael A. Moroni, Bloomfield, MO, argued, for appellant.

Larry Howard Ferrell, Assistant U.S. Attorney, Cape Girardeau, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and LONGSTAFF,* District Judge.

LONGSTAFF, District Judge.

Appellant John Henry Turner Jr. was charged in an eight count indictment. Seven

---

* The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

counts charged Turner with distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and one count charged Turner with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and 846. On December 15, 1995, a jury returned a verdict finding Turner guilty on all counts. On March 19, 1996, the district court[1] sentenced Mr. Turner to 372 months of imprisonment.

In this direct appeal, Mr. Turner challenges his conviction on five grounds. First, Turner states that the trial court committed reversible error in denying his motion for judgment of acquittal or new trial based upon the Government's failure to inform him of a Government witness' seizure disorder in violation of *Brady v. Maryland*. Second, Turner argues that the district court abused its discretion by not allowing evidence of hospital records relating to the prior medical history of the same Government witness. Third, Turner asserts that the trial court abused its discretion by refusing to take judicial notice of several medical texts and in refusing to permit his trial counsel to read to the jury from these books. Fourth, Turner states that the trial court abused its discretion by allowing the testimony of a witness pursuant to Federal Rule of Evidence 404(b). Lastly, Turner argues that the district court abused its discretion by refusing to permit him to cross-examine a Government witness about other specific instances of drug activity.

## I.

The cocaine distributions in the present case took place during a series of controlled buys between January 12, 1995 and March 2, 1995. Each buy was made by an informant for the Federal Drug Administration, Ronald Bradford. These transactions were observed by law enforcement officers and sometimes the conversations between the participants were recorded. Bradford purchased crack

cocaine from Turner on six separate occasions and also made one controlled buy from Darrell Cammon, a witness for the Government at trial, involving cocaine that had been supplied to Cammon by Turner.

At trial, Bradford testified that on February 9, 1995, he met with Turner and paid a debt of $350 that he owed Turner. Turner seemed agitated and Bradford was concerned that Turner might believe that he was an informant. Then, in a later taped telephone conversation, Turner stated to Bradford that he thought somebody was "snitching." Turner also indicated that if he thought Bradford was snitching on him, Bradford would definitely have known about it. Bradford testified that after this conversation he became concerned for his safety because he had been previously beaten up for providing assistance during a separate investigation.[2] Bradford indicated that he had to seek medical treatment as a result of this beating.

On cross-examination, Turner's counsel inquired into the particulars of the assault and Bradford's treatment. Turner's counsel then obtained Bradford's medical records which indicated that on February 5, 1995, Bradford was present at the emergency room of a hospital and stated that he had been mugged and complained of pain in the face, back, and a laceration of the scalp. The records also indicated that on June 23, 1992, July 22, 1992, and January 24, 1993, Bradford had been treated at the hospital emergency room for what the records referred to as a "seizure disorder."

On the last day of trial, Turner offered Bradford's entire medical records into evidence and took the position that no expert testimony was necessary regarding the "seizures" because they are within the common knowledge of the jury. Turner argued that, insofar as they revealed seizures, the records were admissible to give an alternative explanation for the injuries Bradford stated he received as a result of an assault which he

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

2. Bradford testified at trial that he could not remember the exact date that he was hospital-

ized for the injuries received in the assault, but thought it was in the fall of 1994, prior to the Turner investigation. However, the medical records of the hospital indicated that Bradford had been treated in the emergency room in February of 1995.

was treated for on February 5, 1995. The district court denied the admission of the hospital records. Turner then asked the court to permit him to read a portion of some medical texts relating to the term "seizure." The court declined to take judicial notice of the texts and did not permit any portion of them to be read to the jury.

Darrell Cammon was another Government witness to testify at the trial. Cammon was arrested on March 21, 1995, for selling cocaine base to Bradford. The cocaine base had been supplied to Cammon by Turner. Following Cammon's arrest he began to cooperate with law enforcement officials and testified at trial. During the cross-examination of Cammon, Turner's counsel attempted to inquire about an incident in which Cammon was arrested with two other individuals in a car with a large sum of money and a gun. Cammon had not been convicted of this offense. The Court did not allow Turner's counsel to inquire into these matters.

The Government also called Marcus Jimerson to testify at the trial. As a result of pleading guilty to the charge of possession with intent to distribute cocaine base several years earlier, Jimerson was incarcerated in the Bureau of Prisons in Texarkana, Texas. Jimerson testified that he began to associate with Turner in June or July of 1990 and served as an occasional supplier of drugs for Turner until his arrest in December of 1992. The district court read the jury a limiting instruction concerning the use of Jimerson's testimony at the time he began to testify about the drug transactions with Turner.

## II.

Turner first contends that the Government violated the *Brady* rule by failing to disclose that Ronald Bradford, an informant-witness, had been treated for a seizure disorder. In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

In order to establish a *Brady* violation, Turner must demonstrate that the "prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." *United States v. Duke,* 50 F.3d 571, 577 (8th Cir.1995) (citing *Prewitt v. Goeke,* 978 F.2d 1073, 1078 (8th Cir.1992)), *cert. denied,* —— U.S. ——, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995). "[T]he *Brady* rule applies to impeachment evidence, as well as to exculpatory evidence." *U.S. v. Jones,* 34 F.3d 596, 599 (8th Cir.1994) (quoting *United States v. Wayne,* 903 F.2d 1188, 1192 (8th Cir.1990) (citing *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972))), *cert. denied,* —— U.S. ——, 115 S.Ct. 1701, 131 L.Ed.2d 563 (1995).

Under the first prong of the *Brady* analysis, "the government has no affirmative obligation to discover potentially exculpatory information which it neither possessed nor was aware of." *United States v. Hawkins,* 78 F.3d 348, 351 (8th Cir.1996) (quoting *United States v. Dunn,* 851 F.2d 1099, 1101 (8th Cir.1988)), *cert. denied,* —— U.S. ——, 117 S.Ct. 126, 136 L.Ed.2d 76 (1996). As a result, there is no *Brady* violation if the government does not "possess" the material at issue. *Jones,* 34 F.3d at 599 (citing *United States v. Tierney,* 947 F.2d 854, 864 (8th Cir.1991)).

In the present case, it is undisputed that the information concerning Bradford's seizure disorder was never in the possession of the Government. In fact, Bradford's seizure disorder was discovered as a result of a subpoena issued during trial by defense counsel. Because the Government was neither aware of nor in possession of any information concerning the informant-witness' alleged seizure disorder, it cannot have violated the *Brady* rule.

In addition, evidence is material under the *Brady* rule only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A "reasonable probability" is a probability

sufficient to undermine confidence in the outcome. *Id.* Given the substantial amount of evidence indicating that Turner was guilty and the minimal effect, if any, that knowledge of the seizure disorder would have, it is clear that the outcome of the case would not have been undermined by the admission of the medical records.

## III.

Turner next argues that the district court erred by not allowing into evidence the hospital records relating to the prior medical history of Ronald Bradford. Turner asserts that the hospital records are admissible to demonstrate that Bradford, a witness-informant in the present case was not beaten up as he testified, but rather, had a seizure that injured him.

■ The admission or exclusion of evidence is committed to the sound discretion of the district court and will not be disturbed unless there has been a clear abuse of discretion. *West v. Carson,* 49 F.3d 433, 435 (8th Cir.1995) (citation omitted). The only relevance of the hospital documents is to impeach Bradford. Under Federal Rule of Evidence 608(b), specific instances of conduct for the purpose of attacking a witness' credibility cannot be proven by extrinsic evidence. Federal Rule of Evidence 608(b). Therefore, the district court did not err by refusing to admit the extrinsic evidence, the medical records, to attack Bradford's credibility.

## IV.

■ Third, Turner asserts that the trial court abused its discretion by refusing to take judicial notice of several medical texts [3] and in refusing to permit his trial counsel to read to the jury from these texts. Federal Rule of Evidence 803(18) is an exception to the hearsay rule and governs the admissibility of learned treatises. The rule defines learned treatises as:

To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. . . .

Federal Rule of Evidence 803(18). In the present case, there was no expert testimony establishing the texts as authoritative. Federal Rule of Evidence 803(18) provides that the portions of the text may be read only to the extent that it is called to the attention of an expert witness or relied upon by the expert witness in direct examination. Thus, the district court correctly ruled that the medical texts could not be admitted pursuant to Federal Rule of Evidence 803(18).

■ Turner also asserts that the texts should have been admitted pursuant to Federal Rule of Evidence 803(24), the residual exception to the hearsay rule. The district court was not presented with this argument. As a result, this Court can only consider this issue under the plain error standard of review, which precludes reversal of the district court unless Turner can show that (1) the court committed an error; (2) the error is clear under current law; and (3) the error affects his substantial rights. *U.S. v. Jennings,* 12 F.3d 836, 839 (8th Cir.1994) (citations omitted).

■ Allowing Turner to introduce the medical texts under Federal Rule of Evidence 803(24), when Federal Rule of Evidence 803(18) specifically deals with the admissibility of this type of evidence, would circumvent the general purposes of the rules. Therefore, the district court did not commit error by refusing to allow the introduction of the medical texts pursuant to Federal Rule of Evidence 803(24).

## V.

■ Next, Turner argues that the district court abused its discretion by permitting Marcus Jimerson to testify concerning Turner's dealing in large amounts of cocaine

---

**3.** Counsel for Turner identified the texts as *Neurology for the House Officer,* 2nd Ed., written by Howard L. Weiner, M.D. and Laurence P. Levitt, M.D.; *Medical Emergencies, Diagnosis and Management,* written by Richard Robinson and Robin Scott Fitz; *The Portable Internist,* by Hanley and Belfus; and *Primary Care in Medicine,* Editor in Chief, John Noble.

base from June of 1990 until December of 1992. The testimony of this witness was admitted as evidence of other crimes under Federal Rule of Evidence 404(b). The district court has broad discretion in determining whether to admit evidence pursuant to this rule, and this Court will overturn the admission of prior bad acts evidence only if Turner can demonstrate that the "evidence clearly had no bearing upon any issues involved." *United States v. Baker*, 82 F.3d 273, 276 (8th Cir.) (citation omitted), *cert. denied*, ─── U.S. ───, 117 S.Ct. 538, 136 L.Ed.2d 423 (1996); *United States v. Dobynes*, 905 F.2d 1192, 1195 (8th Cir.1990) (citation omitted), *cert. denied*, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990). Evidence is admissible under 404(b) if the evidence is (1) relevant to a material issue; (2) of crimes similar in kind and reasonably close in time to the crime charged; (3) sufficient to support a jury finding that the defendant committed the other crime; and (4) more probative than prejudicial. *Baker*, 82 F.3d at 276.

■ First, the testimony of Jimerson was relevant to the material issues of Turner's intent, motive, and knowledge. *See United States v. Wint*, 974 F.2d 961, 966–67 (8th Cir.1992) ("Federal Rule of Evidence 404(b) permits the admission of evidence of other bad acts to prove, among other things, intent, motive, or knowledge."), *cert. denied* 506 U.S. 1062, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993). Also, the testimony of Jimerson concerned "crimes of similar kind" to those committed by Turner. Turner was charged with distributing cocaine base and conspiring to distribute cocaine base. Jimerson's testimony involved the same type of conduct as that charged against Turner, agreeing to and buying large quantities of cocaine base. *See United States v. Wint*, 974 F.2d 961, 967 (8th Cir.1992) (evidence of prior arrest for possession of crack cocaine was sufficiently similar to be admissible in a case where the defendant was charged with conspiracy to distribute cocaine because "both involved distributable amounts of cocaine"). The prior crimes evidence was also reasonably close in time, occurring approximately one to two years

prior to the offense charged in the indictment. *See Wint*, 974 F.2d at 967 (8th Cir. 1992) (5 years is acceptable); *United States v. Burkett*, 821 F.2d 1306, 1309–10 (8th Cir. 1987) (7 years is acceptable). Therefore, Jimerson's testimony concerned crimes that were similar in kind and reasonable in time, the second requirement.

Third, based on Jimerson's testimony, a jury could reasonably find by a preponderance of the evidence that the act occurred and Turner was the actor. *United States v. Williams*, 895 F.2d 1202, 1205 (8th Cir.1990) (stating the standard to determine whether there was sufficient evidence to support a jury finding that the defendant committed the other crime). Fourth, the evidence must be more probative than prejudicial. The trial court limited the prejudicial effect of the prior bad acts evidence by giving the appropriate limiting instruction prior to the admission of the evidence and in its charge to the jury. The trial court did not abuse its discretion in concluding that the testimony of Jimerson was more probative than prejudicial. *See Wint*, 974 F.2d at 967 (probative value of evidence of prior arrest while in possession of distribution amounts of cocaine was not substantially outweighed by the potential prejudicial effect because evidence of prior drug transactions is admissible to prove that a defendant acted knowingly and intentionally); *United States v. House*, 939 F.2d 659, 663 (8th Cir.1991) (district court did not abuse its discretion in admitting the testimony of a government witness who indicated that the defendant, who was charged with possession with intent to distribute cocaine, had sold "crack" cocaine on a daily basis at least a month prior to the defendant's arrest).

## VI.

■ Turner's final argument is that the district court abused its discretion by refusing to permit him to cross-examine a Government witness about other instances of drug activity. During the cross-examination of Government's witness Darrell Cammon, Turner's counsel attempted to question Cammon concerning a specific incidence of alleged drug activity Cammon may have been involved in on April, 1994. The incident was unrelated to Turner or the offense for which he was tried. In addition, Cammon was not

convicted of a crime regarding this alleged incident.

Because Cammon was not convicted of a crime in relation to this incident, evidence of this incident is not admissible to challenge the credibility of Cammon unless it is probative of his truthfulness. *See* Fed.R.Evid. 608(b). Misconduct involving violations of narcotics laws is not an act involving dishonesty or untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b). *See Crimm v. Missouri Pacific R. Co.,* 750 F.2d 703 (8th Cir.1984) (holding that the district court did not abuse its discretion in determining that illegal drug use or transactions, without more, do not show untruthfulness under Fed.R.Evid. 608(b)); *United States v. Bentley,* 706 F.2d 1498, 1510 (8th Cir.) (district court did not abuse its discretion in concluding that evidence of a drug operation was not indicative of a lack of truthfulness under Fed.R.Evid. 608(b)), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983). As a result, the district court did not abuse its discretion by refusing to permit Turner's counsel to cross-examine Cammon about other instances of drug activity.

The decision of the district court is AFFIRMED.