# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 98-1162

—————————

United States of America,     *
                                      *

        Appellee,     *

                                      *   Appeal from the United States

      v.                    *   District Court for the

                                      *   Eastern District of Arkansas.

Stephanie R. Nichols,     *

                                      *

        Appellant.     *

—————————

Submitted: May 14, 1998
Filed: August 7, 1998

—————————

Before BOWMAN, Chief Judge, HEANEY, and HANSEN, Circuit Judges.

—————————

BOWMAN, Chief Judge.

Stephanie R. Nichols was convicted of conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 371, 2113 (1994 & Supp. II 1996). The District Court[1] sentenced her to thirty months in prison. She appeals both her conviction and her sentence. We affirm.

—————————

[1] The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

I.

Nichols first claims that the evidence is insufficient to sustain her conviction. The three elements that must be proved in order for a jury to find a defendant guilty of conspiracy are "an agreement to achieve some illegal purpose," defendant's knowledge of the agreement, and that defendant "knowingly became a part of the conspiracy." United States v. Ortiz, 125 F.3d 630, 633 (8th Cir. 1997) (quoted cases omitted), cert. denied, 118 S. Ct. 1087 (1998). Nichols contends that there is insufficient evidence of her knowing participation in the conspiracy, that is, of her "criminal intent." Brief of Appellant at 6.

On appellate review of a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the guilty verdict. See United States v. Moore, ___ F.3d ___, ___, Nos. 97-2603, 97-2605, 1998 WL 337961, at *1 (8th Cir. June 26, 1998). The government receives the benefit of all reasonable inferences that may be drawn from the evidence. See United States v. Jorgensen, ___ F.3d ___, ___, Nos. 96-2939, 96-2940, 96-2941, 96-2942, 96-3064, 1998 WL 224032, at *2 (8th Cir. May 7, 1998). Keeping these rules in mind, we begin with a recitation of the evidence that was presented at trial.

On April 21, 1997, Mark Crockett, a confidential informant working with the FBI, called his cousin Robert Watkins to set up a drug deal. Crockett was working with the FBI in hopes of receiving a reduced sentence on a charge of possessing crack cocaine. (He also later received monetary compensation for his assistance in this case.) Crockett, who lived in West Helena, Arkansas, placed the call from the FBI office in West Memphis, Arkansas, to Nichols's home in St. Louis, Missouri, where Watkins was staying. The call was monitored, with Crockett's consent, by Special Agent John Hazen. During the conversation, Watkins said that he wanted to rob the "round bank" in West Helena, which Crockett knew to be the First National Bank of Phillips County, West Helena branch (the Bank). On May 6, 1997, Watkins called Crockett and spoke

again about robbing the Bank. Watkins said his girlfriend--Nichols--would be renting a car, and Nichols and Watkins would drive from St. Louis to West Helena that day to meet with Crockett and plan the robbery. In fact, Nichols did rent a Toyota from Enterprise Leasing Company in St. Louis on May 6, and she drove it to Arkansas that evening, with Watkins as her passenger.

Around midnight on May 6, Nichols and Watkins arrived in West Helena, and went to Crockett's residence. Into the early morning hours of May 7, the three discussed robbing the Bank, among a variety of other topics. Crockett recorded the conversation, which went on for over two hours, with a device Hazen had given him. A redacted and considerably shortened version of the recording was played for the jury at trial. Nichols actively participated in the conversation, and volunteered some suggestions pertinent to carrying out the plan: rob the Bank in the morning when fewer people were about, and when the tellers would have more cash and fewer checks; identify and locate the Bank manager, who would have access to the cash; wear disguises, such as a curly wig, baseball cap, or gold tooth; use mace on Bank employees to facilitate the getaway and to blind the victims and prevent identification. There also was some discussion, in which Nichols participated, regarding a getaway vehicle. The possibility of stealing a car for that purpose was mentioned, as was the feasibility of using the car Nichols had rented.

The next morning, May 7, around 8:00 a.m., with Nichols driving the rental car and Watkins and Crockett as passengers, the three "cased" the location of the planned robbery, driving by the front and back of the Bank. Nichols then parked the car at a Wal-Mart store. She initially stayed with the car and then at some point went into the store, as Watkins and Crockett walked over to the Bank to take a closer look. The trio then drove to Helena "to see who was out, to try to purchase a gun." Trial Transcript at 44 (testimony of Crockett). In the meantime, Hazen had arrived in West Helena from West Memphis, and set up surveillance at the Bank. (Crockett had called him early that morning to alert him to the plans to case the Bank.) Nichols, Watkins, and

Crockett returned to West Helena and drove by the Bank again around 10:30 a.m., a drive-by Hazen had instructed Crockett to arrange. Nichols then took Crockett home, and she and Watkins went to Radio Shack to get frequencies for police scanners. That night, Watkins was arrested while in the rental car with Crockett. Later, Nichols was arrested at Crockett's residence.

After her arrest, Nichols made several admissions to Hazen. She identified as hers the telephone number that Crockett had used to call Watkins, and admitted that she had rented the car in which she and Watkins had traveled to West Helena. She acknowledged that she had heard Watkins and Crockett talking about the robbery, but she said "that she would be too scared to rob the bank." Trial Transcript at 73 (testimony of Hazen). She also admitted driving the car when the three surveilled the Bank, and said Watkins and Crockett had been considering the next day for the robbery.

We will reverse Nichols's conviction on the ground that the evidence of her knowing participation in the conspiracy is insufficient only if a reasonable jury, after hearing all the evidence, would have entertained a reasonable doubt about whether she knowingly joined the conspiracy. See Moore, 1998 WL 337961, at *1. "This standard is a strict one, and a jury verdict should not be overturned lightly." Jorgensen, 1998 WL 224032, at *2 (quoting United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992)).

We conclude the evidence against Nichols is sufficient to convince a reasonable jury, beyond a reasonable doubt, that Nichols knowingly became a part of the conspiracy. She obviously knew what Watkins was about, and in fact drove with Watkins to West Helena, in a car she had rented, to finalize the plans for the robbery. She freely offered her thoughts and suggestions on how the conspirators could avoid identification and apprehension, including recommending the use of particular disguises and mace. She actively participated in casing the Bank--indeed she drove the car past

the Bank several times so that Watkins could have a close look--and in procuring the police scanner frequencies. There is no dispute that the evidence establishes a conspiracy to rob the Bank, and that Nichols knew all about it. Once those elements were proved, "even slight evidence linking" Nichols to the conspiracy is sufficient to establish that Nichols was a co-conspirator. Ortiz, 125 F.3d at 633. The government produced more than "slight evidence" here. We hold that the evidence of Nichols's knowing participation in the conspiracy to commit bank robbery is sufficient to sustain her conviction of conspiracy as charged.

## II.

Nichols next argues that the District Court erred in playing only the redacted tape recording of the conversation that took place in the early morning hours of May 7, 1997. Both the original and the redacted recordings, and the transcripts of both, were admitted into evidence, but only the short version was played for the jury. The jurors were well aware that they heard an abbreviated version of the discussion. See Trial Transcript at 60-61. Nichols now contends that the jury should have heard the entire conversation, but Nichols's trial counsel did not object to the playing of the redacted version or to the offer of that recording as evidence, nor did he ask that the original recording be played in its entirety or in part. Because the District Court was not given the opportunity to address the issue, we will reverse only if the failure to play the unredacted recording resulted in plain error.[2] See United States v. Turner, 104 F.3d 217, 221 (8th Cir. 1997). That is, Nichols must "show that (1) the court committed an error; (2) the error is clear under current law; and (3) the error affects [her] substantial rights." Id.

---

[2]The government contends that Nichols did not merely forfeit her objection, but affirmatively waived it. We doubt that is so, but we do not address the question because we conclude there is no plain error.

Nichols argues that the tape recording of the complete conversation "is exculpatory in nature because the conversation is not lucid but rather chaotic and incoherent." Brief of Appellant at 18. It is true that some of the words spoken are unintelligible, as the transcriber noted, but the conversation is far from "chaotic and incoherent." Moreover, even if it were as confusing as Nichols contends, we fail to see how that would render the recording exculpatory. We have listened to the entire original recording, and most of the inaudible portions of the conversation consist of a word or two or a short phrase, and they do not affect the flow of the conversation or the listener's understanding of the gist of the discussion. At best, we think the jury might have found that the parts of the conversation that cannot be understood made the overall recording annoying to listen to, but not in any way exculpatory.

Nichols also contends that the redacted version of the recording takes her "isolated comments out of context" and "gives the impression that Nichols dominated the conversation." Brief of Appellant at 18, 19. The redacted tape does focus the listener's attention on Nichols's participation in the conversation, and specifically on the times when the topic was the plans for the robbery. But Nichols was the defendant on trial, not Crockett or Watkins, so it stands to reason that the evidence would show her involvement in the conspiracy and would not concentrate on proving the guilt of someone else. Further, it is of no consequence to Nichols's involvement in the conspiracy that someone else may have had more to say about the robbery during the conversation than she did (and in any event we are not convinced that is an accurate representation of the conversation). Any differences in the co-conspirators' relative participation in the planning do not diminish Nichols's active and willing collaboration in the conspiracy. Also, having heard the entire recording, we can say with certainty that Nichols is mistaken when she states that "[a]ll of what Nichols said were spontaneous responses to what Crockett and Watkins discussed." Brief of Appellant at 29. As just one example, the idea to use mace to disable Bank employees was entirely Nichols's own.

Further, we have considered the portions of the unredacted recording that Nichols argues are *actually* exculpatory. We think that the exculpatory content of those parts of the conversation is nil, as they must be taken out of context and unreasonable inferences must be drawn in order for the exchanges to be characterized as "exculpatory."

We conclude that there was no error in the District Court's failure to play the entire recording for the jury sua sponte. Even if there was error, it was not error "seriously affect[ing] the fairness, integrity or public reputation" of the trial, given the unrebutted evidence of Nichols's involvement in conspiring to rob the Bank. United States v. Olano, 507 U.S. 725, 736 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)) (alteration by this Court).

### III.

Finally, Nichols challenges her sentence. She claims the District Court erred in failing to give her a two- or three-level § 3B1.2 adjustment to her base offense level under the Sentencing Guidelines for her mitigating role in the offense, because "[t]here is no substantial evidence that she was going to participate directly in the robbery or drive any getaway car." Brief of Appellant at 30. Trial counsel did not object to Nichols's presentence report, which made no mention of lesser participation in the conspiracy on the part of Nichols, nor did he seek an adjustment under § 3B1.2 from the District Court during sentencing. "Therefore, we review for plain error resulting in a miscarriage of justice." United States v. Jones, ___ F.3d ___, ___, Nos. 97-1344, 97-2235, 1998 WL 264136, at *3 (8th Cir. May 27, 1998).

On this record there simply was no basis to adjust Nichols's base offense level for minimal or minor participation. She was neither "plainly among the least culpable of those involved in the conduct" (minimal role) nor "less culpable than most other participants" (minor role). U.S. Sentencing Guidelines Manual § 3B1.2 comment (nn.1,

3) (1995). "Whether a downward adjustment is warranted is determined not only by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable, but also by measuring each participant's individual acts and relative culpability against the elements of the offense." United States v. Padilla-Pena, 129 F.3d 457, 471 (8th Cir. 1997), cert. denied, 118 S. Ct. 2063, 2064 (1998). As we detailed supra Part I, Nichols was involved in virtually all of the acts undertaken in furtherance of the conspiracy:  renting the car and driving to West Helena, Arkansas, the Bank's location, to finalize plans for the robbery; casing the Bank; driving to Helena in search of a gun to purchase; and acquiring police scanner frequencies.  Her "involvement was not an isolated unsubstantial instance." United States v. Alaniz, Nos. 97-3189, 97-3299, 97-3300, 97-3395, 97-3604, 97-3605, 1998 WL 331282, at *6 (8th Cir. June 24, 1998).  Moreover, we reiterate that Nichols voluntarily and actively participated with Watkins in conspiring to carry out the robbery; whether or to what extent she would have participated in the actual robbery, had it occurred, is immaterial to her culpability for *conspiring* to commit bank robbery.  With this evidence, we cannot say that Nichols would have been entitled to an adjustment for minimal or minor participation, even had she sought one.  There was no error here, and certainly no plain error resulting in a miscarriage of justice.

Nichols argues in her reply brief that "plain error has been satisfied" because the District Court mistakenly believed it could not "depart downward in the sentence." Reply Brief at 7.[3]  She bases her argument on the court's comment when addressing Nichols that "I think there is a very good chance that this tended to be more of a joyride, and maybe in your mind you never thought a bank robbery was ever going to occur." Sentencing Transcript at 5.  But, as the court itself noted, this factual scenario proposed by the court, which also apparently was Nichols's defense to the charge of

---

[3]We need not consider this argument raised for the first time in Nichols's reply brief.  See United States v. Wade, 111 F.3d 602, 603 n.3 (8th Cir. 1997).  We do so, however, because we think Nichols has unfairly represented the District Court's comments and we wish to set the record straight.

conspiracy, goes to the question of guilt, a jury issue, and has little if anything to do with whether Nichols was a minimal or minor participant in conspiring to rob the Bank.

The court also said, "Quite frankly, I wish I had a basis for a downward departure in this case . . . ." Id. at 6. Nichols argues that this comment proves that the court believed it could not give her an adjustment under § 3B1.2 for a mitigating role in the offense. We disagree. Judge Reasoner is an experienced trial judge, well-versed in application of the Sentencing Guidelines, and has applied the § 3B1.2 adjustment in the past. See, e.g., United States v. Lopez, 42 F.3d 463, 469 (8th Cir. 1994). There can be no doubt that the judge was fully aware of his authority to give Nichols an adjustment for minimal or minor participation if he thought it was warranted. That he felt he had no *basis*, as he said, to depart (a term of art under the Guidelines) is distinct from a belief that he lacked *authority* to adjust the base offense level for Nichols's role in the conspiracy under § 3B1.2. Clearly he thought the minimum guidelines range sentence of thirty months was excessive, but his expression of that feeling in no way demonstrates that he believed he was without authority to make a downward adjustment in Nichols's base offense level for a mitigating role in the conspiracy. The judge's comments reflect no error of any kind.

We hold that the District Court did not err in failing to act sua sponte to adjust Nichols's base offense level for a mitigating role.

IV.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-