UNITED STATES of America, Appellee,

v.

Jay Kenton SAMUELSON, Appellant.

UNITED STATES of America, Appellee,

v.

Danny Gene HOFFARTH, Appellant.

Nos. 81–2346, 82–1103.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1982.

Decided Jan. 6, 1983.

Rehearing and Rehearing En Banc Denied Feb. 3, 1983.

Michael L. Pritzker, Ltd., Michael L. Pritzker, Marcia L. Smith, Chicago, Ill., for Samuelson.

Maurice Graham, Brimmell & Graham P.A., Fort Lauderdale, Fla., for appellant, Hoffarth.

Rodney S. Webb, U.S. Atty., H. Gary Annear, First Asst. U.S. Atty., Fargo, N.D., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Jay Kenton Samuelson and Danny Gene Hoffarth challenge their convictions for various drug related offenses. Their appeals, which are based on separate trials, have been consolidated. With respect to Samuelson, the judgment of the district court is affirmed in part and reversed in part. With respect to Hoffarth, the judgment of the district court is affirmed.

Appellants were charged in a fifty-nine count indictment along with sixteen other defendants. The charges arose from an alleged drug conspiracy involving the sale of amphetamines and cocaine. Samuelson was the central figure in the operation, which was based in Fargo, North Dakota. Hoffarth's participation was based on a number of cocaine transactions in Bismarck.

Samuelson was involved directly or indirectly in numerous drug transactions during the period from July or August of 1978 to April or May of 1980. The government produced a number of witnesses who testified that Samuelson sold drugs directly to them, or that he supervised the transactions, or that he was the source of the drugs they purchased.

One of Samuelson's buyers, Thomas Hornbacher, testified about a series of amphetamine purchases beginning in November, 1978 and ending in November, 1979. Hornbacher was introduced to Samuelson in Fargo by Wayne Hetland who arranged with Samuelson for Hornbacher to take over Hetland's "business" while Hetland was out of town. On November 10, 1978 Hornbacher purchased a large quantity of amphetamines from Samuelson. Later in November Samuelson arranged another sale to Hornbacher, and, during the early part of December, the two men travelled to Minneapolis to complete the transaction. They returned to Minneapolis in April, 1979 for yet another sale. Later in April Hornbacher placed another large order and was instructed by Samuelson to rent a room at a certain motel in Fargo. After renting the room, Hornbacher gave the key to Samuelson. Hornbacher later returned to the motel pursuant to Samuelson's instructions and found the drugs in a suitcase. The next day Samuelson asked Hornbacher to deliver another suitcase of drugs to Joseph Schmalz in Minot.

Hornbacher further testified that in June, 1979 he accompanied Samuelson and Samuelson's brother to Minnesota to buy some cocaine.[1] Samuelson called Hornbacher in September to negotiate another amphetamine sale. Hornbacher and Hetland, who had returned from out of town, agreed to the terms and the drugs were delivered by another of Samuelson's brothers. Another sale also took place in September at which time Samuelson was present. In October Hornbacher arranged to sell a large quantity of amphetamines to Dennis Siewert who intended to sell them to Charles

---

1. We note that Samuelson was found not guilty of possession of cocaine with intent to distrib-   ute in connection with this alleged transaction.

Lee, an undercover agent. The sale was not completed due to Samuelson's failure to supply the drugs to Hornbacher. In November Hornbacher again attempted to complete the deal with Siewert, and obtained the drugs pursuant to Samuelson's directions. Hornbacher and Siewert were subsequently arrested.

Another of Samuelson's buyers, Joseph Schmalz, testified that he was in contact with Samuelson in April, 1979, concerning a delivery of amphetamines and that Samuelson asked him to be a distributor in Minot. Samuelson would front the amphetamines to Schmalz who would sell them to two individuals designated by Samuelson. After the sale, Samuelson would make arrangements to pick up the money. Schmalz also corroborated Hornbacher's testimony concerning Hornbacher's delivery of amphetamines to Schmalz in Minot.

In connection with a drug purchase in the fall of 1979, Samuelson instructed Schmalz to drive to Fargo and then to fly to Sioux Falls, South Dakota, where he met Samuelson's brothers and other individuals. He then returned to Samuelson's residence in Fargo where the purchase was completed. Pursuant to another sale in the early part of 1980, Schmalz went to Denver at Samuelson's direction, where he met one of Samuelson's brothers and two other individuals whom he remembered from Sioux Falls. Schmalz was instructed to go to the airport where he was given a baggage claim ticket for two suitcases. The suitcases were claimed, and, after completing the transaction, he returned to Minot. A month or two later, Samuelson came to Schmalz and arranged still another purchase. This time, Schmalz was told to go to Billings, Montana. After some delay in Billings, Schmalz left without completing the transaction.

Other witnesses also testified regarding Samuelson's drug related activities, and telephone records were introduced to show the numerous calls between Samuelson and the persons involved in the various drug transactions.

The evidence of Hoffarth's drug related activities focused on his sales of cocaine to Lowell Baillie. Baillie had purchased amphetamines on several occasions in the early part of 1978 in Bismarck from Adrian Volk, who allegedly obtained his supply from Samuelson. In the late summer of 1978 Baillie met Danny Hoffarth and Bill Griffin in Bismarck and soon thereafter purchased a large quantity of cocaine from Hoffarth. In October, 1979 Baillie made a smaller purchase from Hoffarth and Griffin, and then negotiated a larger purchase of cocaine which he in turn sold to an undercover agent. A similar transaction with the agent was arranged in November, at which time Baillie and Griffin were arrested. While Baillie was in jail, a bondsman from Fargo contacted him, as did Fred Kraemer, an attorney from Fargo who had represented Hornbacher. Baillie had never met either man, but both men indicated that they had been sent to help him. After he was released on bond, they all got into Kraemer's car, and Kraemer made a call on the car's mobile telephone to Samuelson who was apparently at a motel in Bismarck. Hornbacher testified that Samuelson later expressed concern to him about the arrest in Bismarck and said that the cocaine involved in that arrest was his and that he had lost his money because of the arrest.

After separate jury trials, Samuelson was convicted of possession of amphetamines with intent to distribute, distribution of amphetamines, conspiracy to distribute amphetamines and cocaine, engaging in a continuing criminal enterprise, and related offenses; Hoffarth was convicted of possession of cocaine with intent to distribute, distribution of cocaine, and conspiracy to distribute amphetamines and cocaine. We will address their arguments separately.

## SAMUELSON

Samuelson contends that the evidence was insufficient to sustain his convictions. In reviewing the record, we must consider the evidence in the light most favorable to the government and accept all reasonable inferences as established. *United States v.*

*Swarek,* 656 F.2d 331, 333 (8th Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 573, 70 L.Ed.2d 478 (1981).

▆▆▆ Samuelson first attacks the sufficiency of the evidence supporting his conviction for engaging in a continuing criminal enterprise. A conviction for violation of 21 U.S.C. § 848 requires the establishment of the following elements: the commission of a continuing series of violations of federal narcotics laws, in concert with five or more persons, by a person occupying a management or organizing position, who receives substantial income therefrom. We think the record fully supports Samuelson's conviction on this count. His convictions on numerous counts charging violations of federal narcotics laws establish a continuing series of violations.[2] It is clear that at least five persons acted in concert with Samuelson in the series of drug transactions,[3] and that Samuelson occupied a position of management and supervision. He negotiated the sales of large quantities of drugs, made arrangements for payment and delivery, instructed the participants in the transactions, and perhaps furnished bonds and attorneys for those who were arrested. *See United States v. Mannino,* 635 F.2d 110, 116–17 (2d Cir.1980); *United States v. Kirk,* 534 F.2d 1262, 1277–78 (8th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581 and 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977). The evidence also indicates that Samuelson received substantial income from his drug related activities.

▆▆▆ We find no merit in Samuelson's argument that the only evidence of his guilt consisted of hearsay statements which were contradicted by exculpatory hearsay, and that the evidence is therefore insufficient to uphold his convictions. In the first place, there was non-hearsay evidence, such as telephone records and testimony relating to Samuelson's actions. Furthermore, "[i]t is for the jury to resolve questions about conflicting evidence and questions as to the weight and credibility of witnesses." *United States v. Todd,* 657 F.2d 212, 216 (8th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1288, 71 L.Ed.2d 469 (1982).

We are more troubled by Samuelson's contention that the conspiracy and substantive drug charges are lesser included offenses of the continuing criminal enterprise, and that if his conviction for engaging in a continuing criminal enterprise is upheld, double jeopardy bars conviction and sentence on these other counts. We note that Samuelson apparently made no request for a lesser included offense instruction, although he did object at the sentencing hearing to the imposition of sentences for both conspiracy and continuing criminal enterprise.

▆▆▆ The Supreme Court indicated in *Jeffers v. United States,* 432 U.S. 137, 149–50, 97 S.Ct. 2207, 2215, 53 L.Ed.2d 168 (1977), that conspiracy is a lesser included offense of a continuing criminal enterprise. *See United States v. Valenzuela,* 596 F.2d 1361, 1364 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1977); *United States v. Michel,* 588 F.2d 986, 1000–01 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). It appears from the record in the present case that the district court's imposition of a ten year sentence for conspiracy might subject Samuelson to a period of imprisonment beyond the fifteen year sentence imposed for engaging in a continuing criminal enterprise.[4] Because

---

2. It has been held that a minimum of three violations is required to establish a continuing series of violations. *United States v. Valenzuela,* 596 F.2d 1361, 1364–65 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979).

3. It is not necessary that the defendant act in concert with five persons at the same time. *United States v. Mannino,* 635 F.2d 110, 116 (2d Cir.1980).

4. Samuelson's fifteen year sentence for engaging in a continuing criminal enterprise is not subject to suspension, probation, or parole. 21 U.S.C. § 848(c). His sentences on the remaining counts, some of which are to run consecutively to each other, total twenty-four years, ten of which are for the conspiracy count. This composite twenty-four year sentence is to run concurrently with the fifteen year sentence. Thus, it is possible that Samuelson could be

double jeopardy protects against multiple punishments for greater and lesser included offenses, *Brown v. Ohio,* 432 U.S. 161, 168–69, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977); *see Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980), we conclude that Samuelson's conviction and sentence for conspiracy must be vacated. *See United States v. Belt,* 516 F.2d 873, 875–76 (8th Cir.1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976).

In addition to conspiracy, substantive offenses actually relied on in establishing a continuing series of violations may also be considered lesser included offenses of a continuing criminal enterprise. *United States v. Middleton,* 673 F.2d 31, 33 (1st Cir.1982). We need not determine, however, which of the substantive drug charges in the present case were actually relied on by the government nor need we decide whether this issue is properly before this court in the absence of any objection raised before the district court, because Samuelson's prison term based on the fifteen year sentence for engaging in a continuing criminal enterprise will be unaffected by any action we might take with respect to the remaining sentences.[5] *See United States v. Valenzuela,* 596 F.2d at 1365.

We find Samuelson's other arguments concerning juror bias, jury instructions, acquittal of cocaine charges, and denial of new trial, either mooted by our vacation of the sentence for conspiracy, or without merit.

## HOFFARTH

■ Hoffarth's initial contention on appeal is that he was denied a fair trial. First, he argues that the court erred in refusing to grant a mistrial when the prosecution referred to his failure to take the stand.[6] The record suggests that this remark was unintended, and we conclude that any prejudice to Hoffarth was negated by the court's cautionary instruction as well as by the prosecutor's clarification and restatement regarding Hoffarth's failure to call other witnesses.[7] *See United States v. Fanello,* 662 F.2d 505, 508–09 (8th Cir.1981).

■ Hoffarth contends that the government withheld certain evidence, specifically the identity of a "confidential informant" who had been Baillie's employer, thereby denying him a fair trial. Hoffarth asserts that the informant would have disclosed that Baillie's source of cocaine was a person named Dan Dosch rather than appellant Danny Hoffarth. It appears, however, that the informant's identity was discovered during trial and that his deposition was taken by telephone. The informant stated something to the effect that he had heard that Dosch had supplied some cocaine to Baillie at some time prior to the undercover agent's dealings with Baillie. In light of the questionable significance of this testimony, the evidence of Hoffarth's guilt, and

---

required to serve up to nine years beyond the fifteen year sentence for engaging in a continuing criminal enterprise.

We note that there is an inconsistency on the commitment order with respect to whether the sentences for counts 57 and 59 are to run concurrently with or consecutively to the sentence on count 58. It is apparent from the transcript of the sentencing hearing, however, that the district court intended these sentences, all of which relate to tax offenses, to run concurrently.

5. The vacation of Samuelson's sentence for conspiracy leaves a total sentence of fourteen years to run concurrently with his fifteen year sentence for engaging in a continuing criminal enterprise, which, as stated earlier, is not subject to parole. *See* note 4 *supra.*

6. The prosecutor stated: "The question was why we didn't bring in Mr. Schmalz and Mr. Griffin. I submit to you that that is a decision that the government made just as the decision was made by defense counsel not to call the defendant or the witnesses Schmalz or Griffin."

7. The prosecutor stated: "Your Honor, I apologize to the court and jury for this indiscretion. I simply meant, ladies and gentlemen of the jury, that the same opportunities that are available to the United States are available to defense counsel as far as calling witnesses to the stand." Hoffarth also objected to this and related comments but we find no reversible error. *See Weddell v. Meierhenry,* 636 F.2d 211, 214 (8th Cir.1980), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2024, 68 L.Ed.2d 329 (1981).

the opportunity to depose the informant during trial, we find no prejudice in the government's failure to bring the informant to Hoffarth's attention prior to trial. *See Lindhorst v. United States,* 658 F.2d 598, 605–06 (8th Cir.1981), *cert. denied,* 454 U.S 1153, 102 S.Ct. 1024, 71 L.Ed.2d 310 (1982).

██ Hoffarth next challenges the sufficiency of the evidence, and asserts that the evidence shows at most his participation in a conspiracy to distribute cocaine but not in a conspiracy to distribute cocaine *and* amphetamines. We find no merit in Hoffarth's challenge of the sufficiency of evidence concerning his cocaine related activities. We think, however, that his connection to that aspect of the conspiracy involving the distribution of amphetamines is less obvious. Nevertheless, viewing the evidence in the light most favorable to the government, *United States v. Swarek,* 656 F.2d at 333, we conclude that there is sufficient evidence to support his conviction for conspiracy to sell cocaine and amphetamines.[8] Hoffarth's participation in a number of large quantity drug transactions permits an inference of knowledge of a broader conspiracy. *See United States v. Prieskorn,* 658 F.2d 631, 634–35 (8th Cir.1981). It was not necessary for Hoffarth to know all the details of Samuelson's operation. *United States v. Reeves,* 674 F.2d 739, 747 (8th Cir.1982). In addition, his connection to Samuelson's overall operation was suggested by Baillie's involvement with Volk, who purchased amphetamines from Samuelson, by the appearance of Kraemer and the bondsman from Fargo to get Baillie out of jail, and by Samuelson's remark to Hornbacher that the cocaine lost in the Bismarck arrest was his.

We turn now to Hoffarth's assertion of ineffective assistance of counsel. Hoffarth was represented at his arraignment on September 25, 1981 by Brian Nelson. Trial was set for November 18. Hoffarth filed sixteen pretrial motions on November 16. At the hearing the next day, he was represented by Maurice Graham, an out-of-state attorney who was admitted to act as lead co-counsel. One of Hoffarth's pretrial motions was for a continuance on the ground that Mr. Graham had not had adequate time to prepare. It seems that Hoffarth had discharged Mr. Nelson after the September 25 arraignment, but no notice of withdrawal was filed. Mr. Nelson finally informed the court of his discharge after the October 19 notice of trial was sent. He was promptly reminded of the Local Rule 2(d)(5) requiring notice of withdrawal and advised that trial would not be delayed. In denying Hoffarth's motion for continuance, the court noted that Mr. Nelson remained co-counsel as of that time, that Hoffarth had had notice of the pending charges for sixty days, that Hoffarth apparently had made no attempt to retain replacement counsel until November 4, that the government's file had been available for inspection by Hoffarth and his counsel since the arraignment, and that the government had subpoenaed witnesses who were in custody in readiness for trial.

██ The government characterizes Hoffarth's claim of ineffective assistance of counsel as a claim that the court erred in refusing to grant a continuance. In view of the district court's thorough explanation and Hoffarth's lack of diligence in securing counsel, we find no abuse of discretion in denying a continuance. *See United States v. Rochon,* 575 F.2d 191, 199–200 (8th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 564, 58 L.Ed.2d 650 (1978). Moreover, Hoffarth has not shown that he was prejudiced or ineffectively assisted by counsel at trial. *Id.*

Finally, we find no merit in Hoffarth's contentions concerning closing argument, preindictment delay, and the district court's refusal to call Samuelson as a witness.

For the foregoing reasons, No. 81–2346 is remanded with directions to vacate so much of the judgment as relates to conviction and sentence of Samuelson on the conspiracy

---

8. We also conclude that any variance in the indictment and proof, if any existed at all, did not affect Hoffarth's substantial rights. *United States v. Tercero,* 580 F.2d 312, 317 n. 17 (8th Cir.1978).

count. In all other respects the judgment in No. 81–2346 is affirmed. The judgment in No. 82–1103 against appellant Hoffarth is affirmed.