# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2603

_____

United States of America,          *
                                    *
    Plaintiff - Appellee,           *
                                    *
v.                                  *
                                    *
Dennis B. Moore, Sr.,               *
                                    *
    Defendant - Appellant.          *

_____                         Appeals from the United States
                                    District Court for the
No. 97-2605                         Western District of Missouri.

_____

United States of America,          *
                                    *
    Plaintiff - Appellee,           *
                                    *
v.                                  *
                                    *
Keven L. Wyrick,                    *
                                    *
    Defendant - Appellant.          *

_____

Submitted:  January 14, 1998
    Filed:  June 26, 1998

_____

Before LOKEN, FLOYD R. GIBSON,[*] and MURPHY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Dennis B. Moore appeals his conviction for engaging in a continuing criminal enterprise (CCE), committing murder to further the CCE, manufacturing marijuana, and using a firearm in connection with a drug trafficking offense. Keven Wyrick appeals his conviction for committing murder to further the CCE and conspiring to distribute marijuana. The district court[1] sentenced both defendants to life in prison. On appeal, they challenge the sufficiency of the evidence and raise various pretrial, evidentiary, and jury instruction issues. We affirm.

## I. Sufficiency of the Evidence

Moore and Wyrick argue the evidence was insufficient to convict them of murder in furtherance of a CCE, a violation of 21 U.S.C. § 848(e)(1)(A). Wyrick also challenges his conspiracy conviction on this ground. We view the evidence in the light most favorable to the jury verdict and will reverse a conviction for insufficient evidence only if a "reasonable fact-finder must have a reasonable doubt about an essential element of the offense." United States v. Spence, 125 F.3d 1192, 1193 (8th Cir. 1997), cert. denied, 118 S. Ct. 1544 (1998).

The government introduced evidence that Moore began distributing marijuana in the early 1980's, enlisting others to help him, including Orville Childress. Elmont

---

[*]This opinion is consistent with the views expressed by Judge Floyd R. Gibson at the panel's conference following oral argument. Illness has prevented Judge Gibson from reviewing the opinion, which is being filed to avoid undue delay.

[1]The HONORABLE D. BROOK BARTLETT, United States District Judge for the Western District of Missouri.

Kerns and Bill Wayne Price were two of Moore's marijuana suppliers. Moore stored marijuana, weapons, and money in local stash houses operated by various people, including Mike Mason, Moore's brother-in-law. Moore regularly used violence to collect money and enforce discipline within the organization. Wyrick distributed drugs and performed strong-arm and collection work for Moore. Wyrick's delivery helper, Steve Lehman, eventually left Wyrick when he threatened to kill any police officer that tried to stop him.

In the late 1980's, Moore ruined two kilograms of cocaine he had bought from Price on credit for $72,000. Moore obtained $70-80,000 of marijuana on consignment from Kerns, intending to pay Price with the sale proceeds. When Kerns demanded payment for the marijuana, Moore tried to shift responsibility for the debt to Childress and then decided to kill Kerns. Moore first planned to have Wyrick kill Kerns and then Childress kill Wyrick, so the killings would look like a drug deal gone bad, but Childress refused to participate. Wyrick agreed to murder Kerns for $10,000, knowing that Moore's dispute with Kerns concerned a drug debt related to their marijuana trafficking. Moore and Wyrick recruited Terry Wright to help commit the murder. While Moore planned the murder, Wyrick obtained a pistol. On June 27, 1989, Wyrick and Wright entered Kerns's house on a pretense. Wyrick fired several times, hitting Kerns. Wyrick and Wright left in Wright's car, and Wyrick threw pieces of the firearm out the car window. Steve Lehman disposed of their clothing. Wyrick told Lehman he had just murdered Elmont Kerns.

Kerns's body was discovered with many notebooks showing large marijuana transactions between Kerns, Moore, and other traffickers. Entries showed Moore owed Kerns $404,938 and payments by Moore totaling $247,580. Moore disposed of his similar drug records within days of the murder.

After Moore lost Kerns as a supplier, Price was arrested and jailed in April, 1990. When Childress and two other conspirators were subsequently arrested, Moore

hired an attorney for the three and approached James Clark to murder the prosecutor and a cooperating witness, but Clark was arrested on other criminal charges. Despite these blows to his organization, Moore continued to distribute marijuana, enlisting his son and a former babysitter to help. He arranged numerous armed robberies to fund marijuana purchases after a police raid in May 1992 left him short of money. Moore was finally arrested in November 1994. Wyrick continued to buy and sell marijuana until indicted in 1994.

To sustain convictions for murder in violation of 21 U.S.C. § 848(e)(1)(A), an offense for which the death penalty is authorized, the government must prove that Moore and Wyrick were "engaged in or working in furtherance of" Moore's CCE; that Wyrick intentionally killed Kerns and Moore procured the killing; and "that there was a substantive connection between the killing and the CCE." To sustain Wyrick's conviction for conspiracy to distribute marijuana, the government must demonstrate that such a conspiracy existed, and that Wyrick knew of and intentionally joined the conspiracy. See United States v. Jones, 101 F.3d 1263, 1267 (8th Cir. 1996), cert. denied, 117 S. Ct. 1566 (1997). As our brief summary of the trial evidence makes clear, the government presented more than sufficient evidence to prove that Moore's organization was a CCE as defined in 21 U.S.C. § 848(c), that Moore procured and Wyrick committed Kerns's murder working in furtherance of that CCE, and that Wyrick knowingly participated in the marijuana distribution conspiracy. Thus, the evidence was sufficient to sustain all the convictions.[2]

_____

[2]Wyrick argues that the term "continuing criminal enterprise" in 21 U.S.C. § 848(e)(1)(A) is not defined and is unconstitutionally vague because it has "no definite, commonly understood meaning," and that § 848(e) is unconstitutionally vague as applied to him because he did not know the full extent of Moore's CCE activities. We disagree. We upheld § 848(c), which defines "continuing criminal enterprise" for purposes of § 848(a), against a constitutional vagueness challenge in United States v. Kirk, 534 F.2d 1262, 1277-78 (8th Cir. 1976), cert. denied, 433 U.S. 907 (1977). Section 848(e) prohibits murder by a person "working in furtherance of a continuing

## II. Wyrick's Motion To Sever

Wyrick argues the district court erred in denying his pretrial motion to sever. He contends the jury could not compartmentalize the vast amounts of evidence against co-defendant Moore, there was a severe danger of spillover from this evidence, there were multiple conspiracies including many not involving Wyrick, and there were <u>Bruton</u> problems related to Moore's hearsay statements. Although Moore's conspiracy had many facets, it was still only one conspiracy. The trial involved only two defendants and was not overly complex. Wyrick's more limited role in the conspiracy and the disparity in the evidence against Wyrick and Moore did not warrant severance, and the risk that jurors would be unable to compartmentalize the evidence or that evidence against Moore would spill over to Wyrick was minimized by the court's ongoing limiting instructions. <u>See</u> <u>United States v. Kime</u>, 99 F.3d 870, 880 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1015 (1997). Wyrick's <u>Bruton</u> claim rests on statements that did not incriminate him, so the joint trial did not implicate his right to confront and cross-examine Moore. In sum, the court's refusal to sever was not an abuse of discretion.[3]

criminal enterprise." Like the Seventh Circuit, we find nothing unconstitutionally vague in this language. <u>See</u> <u>United States v. Cooper</u>, 19 F.3d 1154, 1165 (7th Cir. 1994). And like the defendant in <u>Cooper</u>, Wyrick was close enough to Moore, the CCE kingpin, to be aware that Moore asked Wyrick to kill Kerns to eliminate a drug debt and thereby further a very substantial and continuing drug trafficking enterprise.

[3]Wyrick also argues the district court erred in refusing to give his requested jury instructions regarding multiple conspiracies. Instead, with Wyrick's consent, the court gave the following instruction after its marijuana conspiracy instruction:

> If you have a reasonable doubt as to whether Keven Wyrick knowingly and intentionally joined in the agreement or understanding referred to in [the conspiracy instruction], then you must find him not guilty of the offense submitted in [that instruction].

Given the overwhelming evidence of one marijuana conspiracy, and the court's explicit

### III. Alleged Multiplicity of the Murder Counts

Counts III and IV of the indictment separately charged Moore and Wyrick with murdering Kerns in furtherance of a CCE and while engaged in a marijuana distribution conspiracy, two types of murder expressly prohibited by 21 U.S.C. § 848(e)(1)(A). In Rutledge v. United States, 116 S. Ct. 1241, 1250 (1996), the Supreme Court held that a drug conspiracy violation of 21 U.S.C. § 846 is a lesser included offense of a CCE violation of 21 U.S.C. § 848. Therefore, Moore and Wyrick could not be convicted or punished for both alleged murders, and Counts III and IV were potentially multiplicitous. On appeal, they contend the district court should have dismissed one of the counts for multiplicity or required the government to elect between them.

Responding to this issue, the district court submitted the two counts together on a single verdict form and instructed the jurors that if they found a defendant guilty of murder in furtherance of a CCE, they need not consider the charge of murder while engaged in a marijuana distribution conspiracy. This eliminated the risk of multiplicitous convictions or punishment, an appropriate remedy for multiplicity. See United States v. Sue, 586 F.2d 70, 71 (8th Cir. 1978) (per curiam). Moore and Wyrick argue they were nonetheless prejudiced because the indictment suggested more criminal activity than actually occurred. However, the jury did not see the indictment. Thus, as submitted, the murder charge was no different than if the government had alleged

---

instruction that to convict the jury had to find that Wyrick joined the conspiracy as defined, there was clearly no plain error in giving this instruction with Wyrick's consent. See United States v. Zimmerman, 832 F.2d 454, 457-58 (8th Cir. 1987).

alternative means to commit the offense in a single count, which Fed. R. Crim. P. 7(c)(1) expressly permits. We conclude the district court did not abuse its discretion.[4]

## IV. Jury Selection Issues

Moore and Wyrick argue the district court erred in sustaining government challenges for cause to venirepersons Martin Slyman, Jerilyn Hatfield, Odie Boney, and Charles Marsh. They further challenge the government's use of peremptory challenges to strike five of the seven remaining African-American venirepersons. See Batson v. Kentucky, 476 U.S. 79 (1986).

A. Venireman Slyman. During voir dire, Slyman said he knew Wyrick and that Wyrick's father, a potential defense witness, used to be his supervisor. Questioned further in chambers, Slyman said he had rooted for Wyrick at boxing matches, and he had "admiration" for Wyrick after reading an article in the KANSAS CITY STAR about Wyrick's boxing career and efforts "to make changes to turn his life around and that type of thing." Though Slyman said he could be a fair and impartial juror, the district court granted the government's motion to strike Slyman for cause, commenting this was "[o]ne of the clearest cases I've ever seen of partiality." Wyrick argues the court improperly ignored the presumption that prospective jurors are unbiased.[5]

---

[4]Wyrick also argues the court erred by framing the alternative murder charge in two separate instructions, instead of in the one instruction Wyrick proposed. That contention is without merit. Moore on the other hand argues the district court erred by instructing that the jury "must" find him guilty if they found the necessary facts true beyond a reasonable doubt. That contention is foreclosed by our decision in United States v. Kroh, 915 F.2d 326, 335 (8th Cir. 1990) (en banc).

[5]We note that Wyrick does not (and cannot) argue that his right to a fair trial was prejudiced, because even if Slyman would have been an impartial juror, he was replaced by another, equally impartial juror. However, the government does not contend that the alleged error is for that reason unreviewable.

When a prospective juror is challenged for cause, the trial court's ruling "ought not be set aside by a reviewing court, unless the error is manifest," that is, unless the for-cause ruling is manifestly wrong on the face of the trial record. Irvin v. Dowd, 366 U.S. 717, 723 (1961) (quotation omitted). That was the situation in Irvin, where many of the jurors had admitted during voir dire they believed the defendant guilty. Here, on the other hand, the voir dire record reveals a basis for partiality, but Slyman said he could be an impartial juror. The district court's decision to strike him for cause was, in essence, a finding that Slyman's partiality denial was not credible. Such a finding cannot be manifest error; indeed, it is virtually unassailable on appeal. Thus, the court's ruling was not reversible error. See United States v. Mills, 987 F.2d 1311, 1314 (8th Cir.), cert. denied, 510 U.S. 953 (1993).

B. Venirepersons Hatfield, Boney, and Marsh. Moore and Wyrick argue the district court erred in sustaining the government's for-cause challenges to three jurors who expressed reservations about their ability to apply the death penalty. The applicable standard is "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quotation omitted). These venirepersons expressed serious doubt as to their ability to consider imposition of the death penalty. When the prosecutor asked Ms. Hatfield if she could, under any circumstances, "consider imposing a death sentence on somebody who didn't pull the trigger," she responded, "No, I don't think so." When defense counsel pressed the issue, she replied, "I really don't think so." Mr. Boney stated that he would consider the death penalty "if a person murdered like maybe 100 or 200 people," but not for "one or two." Mr. Marsh said that if he were choosing between life in prison without possibility of parole and the death penalty, he would "automatically" opt for imprisonment, adding that "it's wrong to take a life." Although defendants point to other testimony suggesting these venirepersons could follow the rule of law, the court found that each would be unable to do so. The record fairly supports these findings and

on this issue, "deference must be paid to the trial judge who sees and hears the juror." <u>Witt</u>, 469 U.S. at 426.  The court did not err in striking these prospective jurors.

C. The Batson challenge.  Moore and Wyrick argue the government struck five of the remaining seven African-American venirepersons for discriminatory reasons. Although they are white, Moore and Wyrick have standing to raise this issue.  <u>See</u> <u>Powers v. Ohio</u>, 499 U.S. 400, 416 (1991).  The government explained that it struck four of the venirepersons because of their opposition to the death penalty and the fifth because he could not put aside a bias against police officers.  Defendants had the burden to prove "purposeful discrimination."  The district court found "no reason to believe that race played any role" in the government's decisions to strike.  After carefully reviewing the record, we conclude the court did not clearly err in rejecting defendants' <u>Batson</u> challenges.  <u>See</u> <u>United States v. Jenkins</u>, 52 F.3d 743, 746 (8th Cir. 1995) (standard of review).

## V.  Evidentiary Issues

A.  Testimony of Steve Lehman.  Government witness Steve Lehman testified that, prior to Wyrick's involvement with the marijuana conspiracy, Lehman and Wyrick sold drugs and robbed other drug dealers to supply their own drug habits, and these activities brought them to the attention of drug kingpin Moore.  Wyrick objected to this testimony as prejudicial evidence of prior bad acts not relevant to any proper purpose under Fed. R. Evid. 404(b).  The district court admitted the testimony because it was "intimately related to and involved with the circumstances of the alleged offenses," and because its probative value outweighed the danger of unfair prejudice.  Wyrick argues this ruling was reversible error.

Rule 404(b) "permits the introduction of evidence of other criminal activity to complete the story of the crime on trial by proving its immediate context," <u>United States v. Howard</u>, 504 F.2d 1281, 1284 (8th Cir. 1974), or by explaining the

circumstances of the alleged crime or the relationship between alleged conspirators, <u>see</u> <u>United States v. McGuire</u>, 45 F.3d 1177, 1188 (8th Cir.), <u>cert. denied</u>, 515 U.S. 1132 (1995). After careful review of the testimony in question, we conclude the district court did not abuse its discretion in overruling Wyrick's objections. <u>See generally</u> <u>United States v. Masters</u>, 622 F.2d 83, 85-88 (4th Cir. 1980).

B. <u>Impeachment of James Clark.</u> Prior to trial, James Clark gave a tape-recorded statement to federal agents in which he said that Moore arranged to hurt people and set up armed robberies, that Wyrick and Childress were the hit men, that Moore admitted plotting Kerns's murder, that Moore wanted Clark or Childress to kill Mark Williams, and that Moore told Clark to kill a cooperating witness. Called as a trial witness by Moore, Clark testified that Childress rather than Moore hired Clark to hurt or murder people, including the cooperating witness, and that Childress set up the armed robberies. In other words, Clark's testimony labeled Childress as leader of the CCE. Moore and Wyrick then moved to prevent the government from introducing Clark's prior statement during its rebuttal case. The district court found the statement admissible to impeach Clark's trial testimony because "[t]he statement in its entirety is inconsistent with the story that was told yesterday from the witness stand." The court concluded that the entire statement must be admitted "to understand and appreciate [its] inconsistent nature." Responding to defendants' contention that Clark was not given an opportunity to respond to the prior statement during his trial testimony, the court noted that the government in cross examination alluded to the prior statement but did not confront Clark with each specific portion of the taped statement. The court ruled that Fed. R. Evid. 613(b)[6] does not *require* an opportunity to respond before the prior statement is admitted, and that defendants would be permitted to recall Clark to respond to the statement after it was admitted into evidence.

---

[6]Rule 613(b) provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

On appeal, Moore and Wyrick argue the taped statement should have been redacted because only portions were inconsistent. But a prior statement need not be "diametrically opposite" to be inconsistent, and the trial judge has "considerable discretion" to determine when a statement is inconsistent with the witness's trial testimony. See United States v. Rogers, 549 F.2d 490, 496 (8th Cir. 1976), cert. denied, 431 U.S. 918 (1977). The district court did not abuse its discretion in admitting the entire statement to convey the true extent of its inconsistency.

Defendants further argue that the taped statement was inadmissible because Clark had no opportunity to respond to *each inconsistency* before its admission. Traditionally, courts have insisted that a witness be directed to a prior inconsistent statement during cross-examination, before the statement is admitted. But Rule 613(b) provides that "the witness [have] an opportunity to explain and the opposite party an opportunity to examine on the statement, with no specification of any particular time or sequence." Rule 613 Advisory Committee Note to Subdivision (b); see United States v. Sutton, 41 F.3d 1257, 1260 (8th Cir. 1994); McCormick on Evidence § 37 (4th ed. 1992). One method of providing such an opportunity is to allow recall of the witness after the prior statement is admitted. See United States v. Lynch, 800 F.2d 765, 770 (8th Cir. 1986).

In this case, although the government during cross-examination did not confront Clark with every statement on the tape, he was given a substantial opportunity to explain his prior statements before the tape was admitted -- the government asked whether he remembered making a tape-recorded statement to federal agents in the fall of 1992, and whether he remembered telling them that Moore hired Wyrick to hurt people and that Moore told Clark to kill the cooperating witness and wanted Clark to kill Mark Williams. In response, Clark vacillated between denying having made the statements and claiming they were inaccurate because he was under the influence of drugs at the time of the interview. Concluding "it would have been futile for the government to have gone through any more . . . the pattern was clear," the court

-11-

admitted the entire statement and allowed defense counsel to recall Clark after the government's rebuttal. This ruling was consistent with the plain language of Rule 613(b) and sensibly resolved the issue. There was no abuse of the court's discretion.

C. Admission of Cocaine Sales Evidence. The superseding indictment alleged a conspiracy to manufacture and distribute marijuana, but Count One more broadly accused Moore of a CCE comprised of a series of drug violations "including but not limited to, the offenses charged in [the] Superseding Indictment, which violations and others were part of a continuing series of felony violations of Subchapters I and II of the Comprehensive Drug Abuse Control Act of 1970." At trial, Moore and Wyrick objected to the government's evidence of cocaine distribution, arguing that this evidence was not contemplated by the indictment. The court admitted the evidence, concluding that Count One included the possibility of cocaine distribution, and finding that defendants had sufficient notice cocaine evidence might be introduced. The court later instructed the jury that cocaine distribution was one possible predicate offense to Moore's alleged CCE activities. On appeal, Moore and Wyrick argue this amounted to an improper constructive amendment of the indictment.

There is no requirement that the drug offenses predicate to a CCE violation be specifically listed in the indictment, provided the defendant had actual notice of the charges. See United States v. Johnson, 982 F.2d 1192, 1197 (8th Cir. 1992); United States v. Becton, 751 F.2d 250, 256-57 (8th Cir. 1984); United States v. Simmons, 923 F.2d 934, 952 (2nd Cir.), cert. denied, 500 U.S. 919 (1991); United States v. Alvarez-Moreno, 874 F.2d 1402, 1408-10 (11th Cir. 1989), cert. denied, 494 U.S. 1032 (1990). Given the broad language of Count One, it cannot be said that Moore and Wyrick were convicted of a CCE charge not made in the indictment, the kind of constructive amendment that caused us to reverse in United States v. Yeo, 739 F.2d 385, 387 (8th Cir. 1984). That reduces the issue to one of notice or surprise. See United States v. Wessels, 12 F.3d 746, 750-51 (8th Cir. 1993), cert. denied, 513 U.S. 831 (1994).

Wyrick and Moore had repeated actual notice of the government's intent to introduce cocaine distribution evidence -- from the broad language of Count One, from the government's pretrial report detailing the conspiracy's cocaine trafficking, and from the government's opening statement, which advised that "[t]he evidence in this case will show a cocaine distribution scheme . . . overseen, again, by the Defendant Dennis B. Moore, a scheme in which he used one of his marijuana sources to obtain cocaine which he would then, in turn, distribute locally." Indeed, in objecting to this evidence at trial, defense counsel admitted awareness "that cocaine might play into the case a little bit." Thus, the district court did not err in admitting cocaine distribution evidence and permitting its use to establish one of the predicate drug trafficking violations necessary to prove a CCE.

D. Admission of Firearms. Wyrick and Moore argue that eight firearms delivered by conspirators to Michael Mason should not have been admitted at trial because they were irrelevant and unfairly prejudicial. See Fed. R. Evid. 401, 403. Given the extensive testimony of gun use and intimidation by members of the drug trafficking conspiracy, the firearms were relevant to the government's case and not unfairly prejudicial. See United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997).

E. Moore's Motion To Suppress. Moore argues the district court erred by overruling his motion to suppress evidence seized during a May 1992 warrant search because there was no probable cause to support issuing the warrant and because the warrant's language was so unspecific as to constitute an unconstitutional "general" warrant. We disagree. The warrant's supporting affidavit recited that a reliable informant had observed controlled substances, drug paraphernalia, and weapons at Moore's residence in April and early May of 1992, and that police had corroborated much of the informant's information. This affidavit supplied a sufficient basis for the magistrate to conclude there was a "fair probability" the described items would be found in Moore's home on May 12. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Nor was the warrant's reference to "drug paraphernalia" impermissibly broad or vague.

-13-

In the context of a search for marijuana, "use of 'paraphernalia' was sufficiently definite to make a violation of Fourth Amendment rights highly unlikely." United States v. Johnson, 541 F.2d 1311, 1315 (8th Cir. 1976). The warrant in this case is less broad than the one challenged in Johnson, as it referred to "drug" paraphernalia.

## VI. Witness Credibility Instructions

Wyrick and Moore argue the district court erred by refusing to give their requested cautionary instructions regarding witnesses who testified pursuant to plea agreements and witnesses who testified falsely at prior proceedings. Moore also alleges error in the refusal to give his requested accomplice witness instruction. The court gave instructions, based upon Eighth Circuit Model Instruction 4.04, advising the jury to give the testimony of immunized witnesses such weight as the jurors thought it deserved, advising the jurors in weighing credibility to "consider . . . whether that witness said something different at an earlier time," and cautioning that the fact that trial witnesses pleaded guilty to a crime for which Moore and Wyrick were on trial must not be considered as evidence of their guilt. These instructions fairly covered "the substance of the requested instruction[s]." United States v. Walker, 97 F.3d 253, 255 (8th Cir. 1996). Failure to give an accomplice credibility instruction was not reversible error because the testimony was amply corroborated. See United States v. McGinnis, 783 F.2d 755, 758 (8th Cir. 1986); cf. United States v. Einfeldt, 138 F.3d 373, 379 (8th Cir. 1998).

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-