UNITED STATES of America,
Plaintiff,

v.

Robert Lee NORMAN et.
al., Defendants.

Criminal No. 01–65.

United States District Court,
S.D. Iowa.

Aug. 15, 2002.

Chip J. Lowe aka, Howe Cunningham & Lowe PlC, Urbandale, IA, Timothy Mccarthy, II, McEnroe McCarthy & Gotsdiner, West Des Moines, IA, for defendant.

Craig Peyton Gaumer, United States Attorney, Clifford D Wendel, Jr., United States Attorney, Des Moines, IA, for U.S.

## MEMORANDUM ORDER

PRATT, District Judge.

Before the Court are Defendant Norman's Motion to File Post–Trial Motions Out of Time (# 623), Motion to File Overlength Brief (# 626) and Renewed Motion for Judgment of Acquittal or New Trial (# 625). Defendant's Motion to File an Overlength Brief is granted. The Government has filed a resistance to the remaining motions and the matter is fully submitted.

## I.

■ While conceding that the time to file motions pursuant to Federal Rules of Criminal Procedure 29 and 33 has long since expired, Defendant urges that the Court possesses jurisdiction to rule on the Renewed Motion for Judgment of Acquittal or New Trial pursuant to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, Defendant asserts that trial counsel's failure to timely file post-trial motions constitutes ineffective assistance of counsel. Thus, according to Defendant, the Court may hear the renewed motion. The Court disagrees. The seven-day deadline for filing a motion for new trial or receiving an extension of time to file such a motion is jurisdictional. *United States v. Johnson,* 982 F.2d 1192, 1195 (8th Cir.1992); Fed.R.Crim.P. 33. Similarly, a motion for new trial on a claim of ineffective assistance of counsel is subject to the seven-day deadline. *United States v. McKinney,* 79 F.3d 105, 108 (8th Cir.1996), *judgment vacated on other*

*grounds,* 520 U.S. 1226, 117 S.Ct. 1816, 137 L.Ed.2d 1025 (1997). The Eighth Circuit has held, "Additional grounds raised in amendments, supplements or renewals of a timely motion for new trial are procedurally barred if not asserted within the seven-day time limit unless the district court grants an extension before the original seven-day period has expired." *United States v. Villalpando,* 259 F.3d 934, 937 (8th Cir.2001) (citing *United States v. Flynn,* 196 F.3d 927, 931–32 (8th Cir. 1999)).

■ While the Court does not believe it possesses jurisdiction to rule upon Defendant's Renewed Motion, it will nevertheless comment briefly on the arguments asserted therein as the parties' filings indicate that many of these same issues may arise at sentencing. The Court notes, however, that even though Defendant's requested relief is jurisdictionally barred, Defendant is not without recourse. A collateral postconviction action under 28 U.S.C. § 2255 is the appropriate means for raising a claim of ineffective assistance of counsel and for developing a record sufficient to examine counsel's performance. *See United States v. Jackson,* 204 F.3d 812, 815 (8th Cir.2000).

## II.

Defendant's Renewed New Trial Motion first contends that his conviction of both Counts I and II of the Fourth Superceding Indictment violates the Double Jeopardy Clause of the United States Constitution. Count One of the Fourth Superceding Indictment alleged that Defendant participated in a Continuing Criminal Enterprise ("CCE") in violation of 21 U.S.C. § 848. Count II alleged that Defendant participated in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. Defendant asserts that both convictions cannot stand and urges the Court to set aside, vacate, or otherwise dismiss Count II of the Fourth Superseding Indictment and the jury verdict thereon.

■ It is clear that *Rutledge v. United States* squarely decided that conspiracy is a lesser included offense of a CCE and that convictions for both based on the same set of predicate facts would violate double jeopardy. *Rutledge v. United States,* 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). This is so because 21 U.S.C. § 846 contains no elements that are not required under 21 U.S.C. § 848. *See id.* (citing *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977)) (applying the *Blockburger* test). In *Rutledge,* the Court found that the appropriate remedy for conviction of both offenses was vacation of either the § 846 or the § 848 conviction. *Id.* at 305, 116 S.Ct. 1241. It is clear to the Court that Defendant's conviction of both Counts I and II cannot stand in light of *Rutledge,* as both convictions are founded upon the same predicate conduct. *See also United States v. Jefferson,* 215 F.3d 820, 823 (8th Cir.2000) (appropriate remedy for conviction of both § 848 and § 846 is vacation of § 846 conviction); *United States v. Grubbs,* 829 F.2d 18, 19 (8th Cir.1987) (same); *United States v. Maull,* 806 F.2d 1340 (8th Cir.1986) (same). Nonetheless, the Eighth Circuit Court of Appeals has sanctioned a procedure wherein it "review[s] the merits of both convictions and remand[s] to the district court to vacate one of them, assuming both were (apart from the double-jeopardy point) upheld." *United States v. Jelinek,* 57 F.3d 655, 660 (1995) (quoting *United States v. Holt,* 969 F.2d 685, 687 n. 1 (8th Cir.1992)). "This remand procedure increases judicial economy, and benefits not only the court, but also the defendant and the government, who are not subjected to

expense and inconvenience of duplicative trials." *Id.*

In accordance with approved Eighth Circuit procedure, at sentencing, the Court will impose a sentence on the CCE conviction. Assuming that the CCE conviction is upheld on appeal, the Court will vacate Defendant's conviction under the conspiracy count. At sentencing, the Court will also contingently impose a sentence on the conspiracy count, to be effective only in the event the CCE conviction is reversed and the conspiracy conviction is affirmed. The Court believes this procedure will adequately and expediently resolve the issue without impinging on Defendant's right to be free from Double Jeopardy. *See id.* at 660 n. 5 ("No double jeopardy is created by the contingent imposition of a sentence because the provisional sentence has no effect unless the first conviction and sentence is overturned.").

### III.

Defendant next contends that submitting both conspiracy and CCE to the jury, without informing the jury that the first is a lesser included offense of the latter, made Defendant appear guilty of a greater number of charges than what the law provides. This, Defendant argues, denied him of a fair trial and fair jury deliberations. Defendant cites *United States v. Moore*, 149 F.3d 773 (8th Cir.1998) in support of this proposition. In *Moore*, the district court instructed the jury that if it found the defendants guilty of murder in furtherance of a CCE, it need not consider a charge of murder while engaged in a marijuana distribution conspiracy. *Id.* at 779. The defendants argued that they were prejudiced by the submission of both charges to the jury because the indictment suggested more criminal activity than actually occurred. *Id.* The Court of Appeals rejected the defendants' argument on the

basis that the jury had never seen the indictment and because, as submitted, the charge was no different than if the prosecution had alleged alternative means to commit the offense in a single count. *Id.* Thus, the *Moore* Court did not specifically address the argument that defendants were prejudiced by the duplicitous charges.

■ In light of the fact that the Court of Appeals has repeatedly approved the process used here, *i.e.*, both CCE and conspiracy are submitted to the jury, but one count of conviction must later be vacated, the Court does not believe that Defendant was sufficiently prejudiced to warrant a new trial. *See United States v. Fairchild*, 189 F.3d 769 (8th Cir.1999); *Jelinek*, 57 F.3d at 660. Additionally, the record reflects that the jury carefully considered each charge against each defendant in reaching its verdicts and does not appear to have been swayed by the mere fact that numerous counts were charged. This is supported by the fact that the jury acquitted one of Norman's codefendants of the CCE charge.

### IV.

Defendant argues that his substantive drug offense convictions pursuant to 21 U.S.C. § 841 cannot stand because they constitute lesser included offenses of the CCE. Defendant relies on *United States v. Samuelson*, 697 F.2d 255 (8th Cir.1983), wherein the Eighth Circuit stated, "[i]n addition to conspiracy, substantive offenses actually relied on in establishing a continuing series of violations may also be considered lesser included offenses." *Id.* at 260 (citing *United States v. Middleton*, 673 F.2d 31, 33 (1st Cir.1982)). The *Samuelson* Court, however, did not ultimately rule on the issue because Samuelson's sentence would have been remained unaffected: "We need not determine, however,

which of the substantive drug charges in the present case were actually relied on by the government...." *Samuelson,* 697 F.2d at 260.

In *United States v. Kirk,* 723 F.2d 1379, 1381 (8th Cir.1983), the question of whether predicate substantive offense constitute lesser included violations of a CCE was before the Court of Appeals again. Again, the Court declined to make a ruling on the issue, instead citing a litany of competing case law. *Id.; Compare United States v. Jefferson,* 714 F.2d 689, 703 (7th Cir.1983) (Congress did not intend that cumulative sentences be imposed upon the predicate substantive offenses of a CCE conviction.); *United States v. Middleton,* 673 F.2d 31, 33 (1st Cir.1982) (A substantive offense actually relied upon to establish a continuing series of violations is a lesser included offense of engaging in a CCE.) *with Iannelli v. United States,* 420 U.S. 770, 777–778, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (Conspiracy to do an act and the completed substantive offense are separate crimes for which separate sentences can be imposed.); *United States v. Hawkins,* 658 F.2d 279, 287 (5th Cir.1981); *United States v. Rone,* 598 F.2d 564, 571 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (Congress clearly intended to permit cumulative punishments for a RICO offense and its underlying predicate crimes.)

In 1985, the United States Supreme Court resolved the issue in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). There, the Court was confronted with the issue of whether Double Jeopardy was violated when a defendant was prosecuted for a CCE violation even though he had previously pleaded guilty to a predicate crime of importing marijuana. *Id.* In its analysis, the Court stated:

Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense. If Congress intended that there be only one offense—that is, a defendant could be convicted under either statutory provision for a single act, but not under both—there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis.

This question of legislative intent arose in *Blockburger* in the context of multiple punishments imposed in a single prosecution. Based on one drug sale, Blockburger was convicted of both selling a drug not in the original stamped package and selling it not in pursuance of a written order of the purchaser. The sale violated two separate statutory provisions, and the question was whether "the accused committed two offenses or only one." The rule stated in *Blockburger* was applied as a rule of statutory construction to help determine legislative intent.

Significantly, after setting out the rule, the Court cited a paragraph in *Albrecht,* which included the following statement: "There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction." We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history. Indeed, it would be difficult to contend otherwise without converting what is essentially a factual inquiry as to legislative intent into a conclusive presumption of law.

In the present case the application of the *Blockburger* rule as a conclusive determinant of legislative intent, rather than as a useful canon of statutory construction, would lead to the conclusion urged by Garrett: that Congress intended the conduct at issue to be punishable either as a predicate offense, or as a CCE offense, but not both. The language, structure, and legislative history of the Comprehensive Drug Abuse, Prevention and Control Act of 1970, however, show in the plainest way that Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses. Insofar as the question is one of legislative intent, the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress.

*Garrett v. United States,* 471 U.S. 773, 777, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985) (internal citations omitted); *see also United States v. Aguilar,* 849 F.2d 92, 99 (3d Cir.1988) (finding that the pivotal fact in *Garrett* was that the predicate offenses at issue were substantive, rather than conspiracy crimes). Additionally, the Supreme Court reaffirmed the validity of its holding in *Garrett* in *Rutledge,* noting:

> *Garrett v. United States,* 471 U.S. 773, 794–795, 105 S.Ct. 2407, 2419–2420, 85 L.Ed.2d 764 (1985), is not to the contrary. There, we affirmed the defendant's prosecution for a CCE violation even though he had previously pleaded guilty to a predicate crime of importing marijuana. *Ibid.* That holding, however, merely adhered to our understanding that legislatures have traditionally perceived a qualitative difference between conspiracy-like crimes and the substantive offenses upon which they are predicated. *See, e.g., United States v. Felix,* 503 U.S. 378, 389–390, 112 S.Ct. 1377, 1384–1385, 118 L.Ed.2d 25 (1992) (allowing prosecution for conspiracy after petitioner was convicted of underlying substantive offense, and citing *Garrett* as a similar case). No such difference is present here. In contrast to the crimes involved in *Garrett,* this case involves two conspiracy-like offenses directed at largely identical conduct.

*Rutledge,* 517 U.S. at 300 n. 12, 116 S.Ct. 1241.

## V.

Defendant next asserts that he is entitled to judgment of acquittal or a new trial on the basis that the Court did not require the jury to come to a unanimous verdict with respect to the identity of the five or more individuals with whom Mr. Norman acted "in concert." Defendant makes a compelling argument in favor of a unanimity requirement in his brief. Nonetheless, this issue has previously been decided in *United States v. Rockelman,* 49 F.3d 418 (8th Cir.1995), wherein the Court stated:

> We hold that the trial court properly refused the proposed "unanimity" instruction. Other circuits have held that the jury need not be so instructed. We join the majority of circuits which hold that the jury need not unanimously agree on the identities of the five persons who were organized, supervised, or managed by the defendant. We are persuaded by the rationale of those cases that the CCE statute is concerned with the size of the enterprise rather than the specific identity of the subordinates. The focus of the statute's "five or more other persons" requirement is to "establish[ ] that the organization in which the defendant played a leadership role was sufficiently large to warrant the enhanced punishment provided by the CCE statute."

*United States v. Rockelman,* 49 F.3d 418, 421 (8th Cir.1995). This Court declines to take a position contrary to the stated law in our Circuit.

## VI.

Defendant argues that there was insufficient evidence to support his conviction on the CCE count. In determining whether evidence is sufficient to support a conviction, the Court must "view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." *United States v. Carter,* 270 F.3d 731, 734 (8th Cir.2001) (citing *United States v. Calderin–Rodriguez,* 244 F.3d 977, 983 (8th Cir.2001)). The evidence will be deemed insufficient only if "no reasonable jury could have found a defendant guilty beyond a reasonable doubt." *Id.* "[T]he standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly." *Id.* (citing *United States v. Brown,* 921 F.2d 785, 791 (8th Cir.1990)).

█ Title 21, section 848 requires proof of five essential elements to support a conviction. First, the defendant must have committed a felony violation of the federal narcotics laws. Second, that violation must be part of a continuing series of three or more related felony violations of the federal narcotics laws. Third, the defendant must have acted in concert with five or more other persons. Fourth, the defendant must have been an organizer, manager, or supervisor. Finally, defendant must have received substantial income or resources. The Court believes that the testimony at trial in this matter amply provided proof of all five elements.

Defendant first claims that there is insufficient proof that he committed drug related offenses. However, at trial, numerous witnesses testified to Mr. Norman's participation in drug trafficking activities. *See e.g.,* Trial Testimony of Chris Borst, Joe Wetherby, Scott Gones, Danny Burns. Next, Defendant claims there was insufficient evidence that he organized or supervised others in the enterprise. Defendant cites *United States v. English,* 925 F.2d 154, 157 (6th Cir.1991) in support of this proposition. There, the Sixth Circuit stated that a person can be found to be "under the Defendant's organization if the person knows about the drug operation and takes orders from the Defendant and helped in the drug business." *Id.* The Court also found that persons who act as brokers or couriers or those who store drugs or launder proceeds fall within the ambit of section 848. *Id.*

In this case, a small sampling of the trial testimony supports the jury verdict that Norman supervised, organized, or otherwise managed five or more individuals in the conspiracy. Brian Holst testified that he was paid by Norman to drive to Colorado to pick up cocaine and bring it to Iowa. Trial Tr. at 228–233. Cory Pendarvis testified that whenever Norman got large quantities to sell, he would have Pendarvis store it in his basement rafters. *Id.* at 350–51. Christopher Borst testified that Norman ran Ballistic Auto as a front for drug dealing. *Id.* at 618–33. He further testified that he worked for Norman and assisted him in obtaining and distributing illegal substances. *Id.* Joe Wetherby testified that he was employed by Norman at Ballistic Auto and was sent on more than one occasion to retrieve vehicles loaded with drugs from Kansas. *See generally id.* (Testimony of Joe Wetherby). Rodney Backous, Scott Gones, and Jewell Ulrich each testified that Norman sent them to find substantial quantities of illegal substances. *See generally id.* Accordingly, the Court is convinced that a reasonable jury could reasonably have found all five

essential elements proved by the appropriate standard based on the testimony presented at trial.

Defendant also argues that there was insufficient evidence in the record to support a finding that Norman derived substantial income from the illegal activities. Testimony at trial indicated that thousands upon thousands of dollars changed hands throughout the course of the conspiracy. The mere fact that Defendant has nothing to show for his activities today does not undermine the jury's finding that he received substantial income or resources.

## VII.

Defendant contends that there is insufficient evidence to support his conviction on Counts 11, 13, 15, 18, 21, 24, 38, 40, and 42. This argument is based primarily on the fact that the present case was an historical case, based primarily upon the testimony of alleged coconspirators and "jailhouse snitches." Nonetheless, it is not the province of the Court to make credibility determinations about the propensity for honesty of government witnesses.

■ Defendant also claims that his convictions cannot be sustained because there was insufficient evidence to prove that the substances involved were actually illegal substances. However, numerous courts have held that scientific testimony about the chemical properties of a substance is not required, so long as the Government produces sufficient direct or circumstantial evidence from which jury is able to identify substance beyond reasonable doubt. *See e.g., United States v. Schrock,* 855 F.2d 327 (6th Cir.1988); *United States v. Murray,* 753 F.2d 612 (7th Cir.1985)("The identity of a drug may be established by circumstantial evidence."); *United States v. Sanchez,* 722 F.2d 1501 (11th Cir.1984) ("Although the identity of a narcotic must be established beyond a reasonable doubt,

its nature may be established through circumstantial evidence."); *United States v. Quesada,* 512 F.2d 1043 (5th Cir.1975); *United States v. Atkins,* 473 F.2d 308 (8th Cir.1973); *United States v. Agueci,* 310 F.2d 817, 828 (2nd Cir.1962) ("[T]he existence of and dealing with narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics."). The Court finds that the jury could reasonably have believed the numerous witnesses who, having previously used or distributed drugs themselves, testified that Norman was, in fact, distributing controlled substances.

## VIII.

Defendant contends that his absence from the State of Iowa for several years while he lived in Missouri and Illinois during the 1990s shows that his involvement in drug distribution activities was terminated. Mary Wetherby, the Defendant's former wife testified that she and Norman lived in Kansas City, Missouri from 1988 until 1990. She further testified that they moved to Chicago after that for about a year, or until 1991.

■ The law provides that the statute of limitations period begins to run when a conspirator withdraws from a continuing conspiracy. *See United States v. Grimmett,* 236 F.3d 452, 453 (8th Cir.2001). If Norman can show that he affirmatively disavowed the conspiracy more than five years before the indictment by "making a clean breast to the authorities or by communicating [his] withdrawal in a manner reasonably calculated to reach coconspirators," the statute would have run. 150 F.3d 958, 961 (8th Cir.1998) (citing *United States v. Askew,* 958 F.2d 806, 812–13 (8th

Cir.1992)). "Having joined in an unlawful scheme, ... until [the conspirator] does some act to disavow or defeat the purpose he is in no situation to claim the delay of the law. As the offense has not been terminated or accomplished he is still offending." *Id.* at 454 (citing *Hyde v. United States,* 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1912)). The burden lies with the defendant to establish that he or she made some affirmative action which would constitute withdrawal from the conspiracy. *Id.* at 454.

■ Despite Defendant's absence from the state for a period of two to three years, the testimony did not establish that Norman withdrew from the conspiracy as a matter of law. Indeed, the bulk of the conspiracy and CCE evidence came in the form of testimony about drug activities in the mid–1990s—a time after Norman was allegedly absent from the state of Iowa. *See e.g.,* Trial Tr. (testimony of Joe Wetherby, Kevin Hummel, Jewell Ulrich, Brian Holst). Defendant offered no evidence that he "disavowed" the conspiracy. Rather, he simply presented evidence that he was absent from the state for a period of time. This is not sufficient to establish withdrawal as a matter of law or to undermine the jury's verdicts.

Defendant also argues that his absence from the state necessitates a finding that there were multiple conspiracies, and hence, a fatal variance of proof on Count 2. The jury was appropriately instructed on the law regarding multiple conspiracies. Whether or not Mr. Norman's absence from the state established merely a break in one long-running conspiracy or the beginning of a new conspiracy was a matter for the jury to determine in its evaluation of all the evidence before it.

### IX.

Defendant finally argues that he is entitled to a new trial because the Government failed to disclose evidence and participated in vindictive prosecution. Defendant's argument is premised on the fact that the FBI investigated the Sons of Silence and eventually decided not to pursue the case. This, Defendant contends, leads to the suggestion that "there is evidence of an exculpatory nature under foot." This argument is, at best, speculation. Defendant offers nothing other than innuendo which could lead the Court to find that evidence was, in fact, withheld. Absent some affirmative showing that the Government failed to disclose exculpatory evidence, or otherwise participated in a vindictive prosecution, the Court declines to grant a new trial on Defendant's urged basis.

### X. CONCLUSION

Defendant's pending motion encompassed in Clerk's Number 626 is GRANTED. Defendants pending motions encompassed in Clerk's Numbers 623 and 625 are DENIED for the reasons stated herein.

IT IS SO ORDERED